**EXHIBIT C**

quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3257**

WRITER'S EMAIL ADDRESS
**joepaunovich@quinnemanuel.com**

May 16, 2025

**VIA EMAIL AND FEDERAL EXPRESS**

Bridget Milot-Ren
Chief Legal Officer
Protective Industrial Products, Inc.
25 British American Blvd.
Latham, NY 12110
Email:  bmren@pipusa.com

**Re:     PIP BioSoft Earplug Product Claims**

Dear Ms. Ren:

We are writing in response to Protective Industrial Product's ("PIP") April 14, 2025 letter and the accompanying documents that PIP provided in response to Moldex Metric, Inc.'s ("Moldex") March 18, 2025 letter.

Moldex's letter requested information and documentation evidencing the scientific substantiation, truth and accuracy of certain specific and general claims relating to PIP's commercially offered BioSoft Earplugs (https://us.pipglobal.com/en/biosofttechnology/) as required by certain regulations.  PIP has failed to provide the requested and/or adequate information and documentation, as required by law.  Moldex requests a response by June 2, 2025.

**I.      Specific Environmental Benefit Claims**

The documents PIP provided as purported evidence for some but not all of the specific environmental benefit claims do not appear to be for PIP's BioSoft products.  For example, all of the documents PIP provided were apparently commissioned by an entity (Nanosystems) that is neither PIP nor its predecessor (Final Fit Safety) and relate to a different product(s) and/or material(s) than PIP's BioSoft products (e.g., labeled in the documents as "Bio D Foam" or "BioNanopol") that were tested at various times during 2020-2022.  Please explain whether the product(s) / material(s) tested in the provided documents are different in any way from PIP's current commercially offered BioSoft products and, if PIP contends the products / materials are the same, provide the evidence substantiating PIP's claim.  Please also clarify whether PIP has

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

03394-23437/15868675.2

conducted or commissioned any testing of the BioSoft products to verify the results in the provided documents given that PIP only recently acquired the product line.

Even if the testing results are accurate and relate to the same products / materials, there are numerous deficiencies in the evidence that suggest PIP's specific environmental benefit claims are not adequately supported for the reasons explained below. Please provide further scientific evidence substantiating PIP's specific environmental benefit claims in light of these deficiencies.

**76% Decomposition Within 180 Days**.  The testing results provided by PIP expressly state that the "[m]ineralization value of 76.1%" is an average value (+/- 6.3%), and that the average value "**does not meet** the limit specified by the UNI EN 13432 standard."  Despite this fact, PIP advertises BioSoft products with a decomposition claim "when tested in accordance with EN 13432," suggesting that BioSoft earplugs comply with the standard, without disclosing that the product *does not* in fact meet the standard.[1]  The standard is also for industrial composting of *packaging*, not earplugs.  PIP does not disclose that the standard is inapplicable to its products.

Moreover, the Federal Trade Commission ("FTC") Green Guides make clear that marketers who claim a product is compostable must have competent and reliable scientific evidence that *all* materials in the product will break down into — or become part of — usable compost in about the same time as the materials with which it is composted.  But some of PIP's BioSoft products include stems and/or cord material that is different than the earplug material.  PIP has provided no evidence that the stem and cord material are compostable to the same level as the earplug material, and if they are not, PIP does not disclose this fact in its advertising or provide a decomposition percentage for the overall product including such components.  The Green Guides also require that marketers qualify whether products are compostable at home or only in industrial facilities, and if the latter, whether such facilities are available to a substantial majority of consumers.  PIP does not provide any such required qualifiers for its decomposition claim. *See* CA Pub. Res. Code § 42355(d).

**82% Bio-Based**.  The testing results provided by PIP for its specific "82%" bio-based claims are based on the source of carbon within any given product sample and indicate material variability in the precision of the test result (+/- 3%).  PIP does not disclose any basis for this 82% claim nor the variability in the results as part of its advertising for BioSoft products.  Moreover, the testing makes clear that any value in between 0% and 100% represents a mixture of natural and *petrochemical* sources, but PIP does not disclose that its products are comprised of at least 18% petrochemicals (and likely more in the case of BioSoft products that include stems and/or cord material to the extent that those materials are different than earplug material).

**Carbon Emissions**. Despite claiming to have conducted carbon footprint analyses, PIP has not provided *any* evidence for its environmental benefit claims related to carbon emissions (e.g., 5.6 times less $CO_2$ carbon emissions and 17.49 lbs carbon equivalent emissions per 10,000 pairs).

---

[1]  PIP's documentation does not include any testing or substantiation for the decomposition claim based on the ASTM 6400 standard, as required by California law.  Please provide test results, if any, PIP obtained utilizing the ASTM 6400 standard that PIP believes substantiates its claims.

2

## II.      General Environmental Benefit Claims

While PIP represents that the company's products and operations align with environmental standards and that it is committed to sustainability, Moldex asked PIP to provide scientific evidence substantiating the truth and accuracy of PIP's ***broad, unqualified and general*** environmental benefit claims, including PIP's claims that BioSoft products are, among other things, "sustainable," "environmentally friendly," "bio-based" (unqualified), and supposedly "reduce emissions" and "lower [the] carbon footprint."  These broad, unqualified and general claims suggest that BioSoft products provide a significant environmental benefit, but the products are not renewable and/or recyclable and PIP does not provide any clear, prominent or specific qualifying statements, identification of the alleged environmental benefit, or identification of the specific material that supposedly imparts the products with such alleged benefits.

Marketers should not make such broad, unqualified general environmental benefit claims like those above because they are difficult, if not impossible, to substantiate and because it is "highly unlikely that marketers can substantiate all reasonable consumer interpretations of these claims."  16 C.F.R. § 260.4(b).  The two documents PIP provided solely in an attempt to support its "eco-friendly" claims illustrates this point.  The primary purpose of earthworm and plant toxicity tests is to determine the potential harm a substance, like a chemical or pesticide, can have on earthworms and specific plants.  Putting aside the fact that PIP does not disclose either of these tests as the basis for any claim about its BioSoft products, the tests conclude merely that:

- "[I]t can be concluded that in ... compost, no residuals were left such as metabolites, undegraded components and inorganic components that exert a negative influence on the survival and mean weight of earthworms."

- "[I]n conclusion, we can state that no negative effects were observed on germination and growth of the tested plants."

It is highly unlikely that all, or even a substantial portion of, consumers would perceive these test conclusions in the same manner, much less as universally supporting broad, unqualified claims that BioSoft products are generally "eco-friendly."  Moreover, there is nothing in the documents saying the tested product(s) / material(s) are "eco-friendly."

Please provide the evidence, if any, that PIP contends specifically supports each of its broad, unqualified and general environmental benefits claims or the legal basis upon which PIP believes it can advertise its BioSoft products as meeting such claims without substantiation.

Sincerely,

Joseph M. Paunovich
Counsel for Moldex-Metric, Inc.

cc:    Amer Latif (by email only)
       Valentina Makhanaeva (by email only)
       Moldex-Metric, Inc.
       Nathan Archibald

03394-23437/15868675.2

4