QUINN EMANUEL URQUHART & SULLIVAN, LLP
Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Fax: (801) 515-7400

*Attorneys for Plaintiff Moldex-Metric. Inc.*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOLDEX-METRIC, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROTECTIVE INDUSTRIAL PRODUCTS, INC., a New York corporation,<br><br>Defendant. | Case No. 2:25-cv-08931-FMO-E<br><br>**JOINT RULE 26(f) REPORT** |

Pursuant to the Court's Order Setting Scheduling Conference (Dkt. 25), Federal Rule of Civil Procedure 26(f), and Local Rule 26-1, and following a video conference meet and confer on January 7, 2026, Plaintiff Moldex-Metric, Inc. ("Moldex") and Defendant Protective Industrial Products, Inc. ("PIP") hereby submit this Joint Rule 26(f) Report:

**A.    Statement of the Case**

Moldex filed this action alleging false advertising and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.  Both Moldex and PIP manufacture and sell foam earplugs.

Moldex alleges that PIP makes false and misleading environmental greenwashing claims about its "BioSoft" earplug products, including but not limited to claims that the products are "82% bio-based," "biodegradable," "sustainable," "eco-friendly," "decompose 76% in 180 days," and reduce "carbon emissions."  For example, Moldex commissioned independent testing of PIP's BioSoft earplug products that allegedly shows the products contain as little as 5% bio-based content. Moldex alleges that it and PIP are direct competitors in the foam earplug market, selling their products through the same distribution channels where they compete head-to-head for the same customers, and that Moldex's foam earplugs and PIP's BioSoft foam earplugs are functionally interchangeable products.  Moldex further alleges that PIP markets its BioSoft foam earplug products as environmentally superior to "traditional PU [polyurethane]" earplugs, like those offered by Moldex, falsely claiming BioSoft products are "82% bio-based" and provide "the same fit and performance" but "with a lower carbon footprint" and alleged decomposition capabilities that traditional polyurethane earplugs like Moldex's allegedly lack. Moldex seeks injunctive relief and damages based on alleged competitive injury from PIP's false and misleading advertising.

-1-

PIP denies these claims. As a threshold matter, PIP alleges that Moldex does not have Article III or statutory standing because, among other reasons, it does not sell a comparable eco-friendly product that competes directly with the BioSoft Earplug product line and has not identified a concrete and particularized injury. In any event, PIP further denies that any of the statements at issue were false, misleading, or deceptive.

PIP filed a motion to dismiss Moldex's initial Complaint on November 21, 2025.  Moldex filed an Amended Complaint on December 12, 2025.  PIP filed a motion to dismiss Moldex's Amended Complaint on January 9, 2026.  Moldex's opposition to PIP's motion is due on January 30, 2026, and PIP's reply is due on February 13, 2026.

**B.     Subject Matter Jurisdiction**

PIP asserts that subject matter jurisdiction is lacking as Moldex does not have Article III or statutory standing to bring any of its claims. (*See* ECF No. 31 (Motion to Dismiss the First Am. Compl.).)  Moldex asserts that this Court has subject matter jurisdiction over Moldex's federal false advertising claim under 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1121 (Lanham Act).  The Court has supplemental jurisdiction over Moldex's state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy as Moldex's federal claim.

**C.     Legal Issues**

The key legal issues are (i) whether PIP's "82% bio-based" claims are literally false; (ii) whether PIP's environmental marketing claims are unsubstantiated and whether reasonable consumers are likely to be misled or deceived by PIP's environmental marketing claims relating to bio-based content, biodegradability, sustainability, carbon emissions, among other things; (iii) whether PIP's at-issue statements are material; (iv) whether Moldex has Article III standing; (v) whether Moldex has standing to bring false advertising claims under the Lanham Act; (vi) whether Moldex has standing to bring false advertising claims under California's

-2-

Unfair Competition Law ("UCL") and False Advertising Law ("FAL"); and (vii) whether and to what extent PIP's false advertising has damaged Moldex.

### D.    Parties, Evidence, Etc.

#### 1.    Moldex

Moldex has no subsidiaries, parents, or affiliates.

Moldex anticipates that percipient fact witnesses in the case may include the following:

- Moldex personnel with knowledge of competitive harm, customer inquiries, and lost sales opportunities relating to PIP's BioSoft earplug product environmental marketing claims;

- Moldex personnel knowledgeable about marketing and sales relating to PIP's BioSoft earplug product environmental marketing claims;

- PIP personnel and PIP's suppliers, vendors, and agents with knowledge regarding the development, formulation, manufacturing, testing, marketing, advertising, and sale of BioSoft earplug products;

- PIP personnel and PIP's suppliers, vendors, and agents with knowledge regarding PIP's BioSoft earplug product environmental marketing claims;

- Representatives from distributors who sell PIP BioSoft earplug products and/or have knowledge regarding marketing and sales of PIP's BioSoft earplug products;

- Representatives from customers who purchased PIP's BioSoft earplug products, inquired about PIP's environmental marketing claims or made purchasing decisions based on alleged environmental benefits of PIP's BioSoft earplug products;

- Personnel from Beta Analytic or other testing laboratories who conducted testing on PIP's BioSoft earplug products.

-3-

Moldex is presently aware of the following key documents or things that relate to the key issues in the case: (i) Beta Analytic testing reports allegedly showing as little as 5% bio-based content in PIP's BioSoft earplug products; (ii) correspondence between the parties, including PIP's March 18, 2025, April 14, 2025, and July 7, 2025 letters; (iii) PIP website screenshots showing BioSoft environmental claims (historical and current); (iv) distributor website screenshots showing PIP's BioSoft environmental claims (historical and current); and (v) customer inquiry records and competitive bid documents. As Moldex conducts discovery in this matter, Moldex anticipates that additional relevant documents will be discovered and disclosed.

### 2. PIP

PIP has a corporate parent—PIP Global Holdings, Inc. PIP anticipates that percipient fact witnesses in this case may include the following:

- Dan Birch, Director of Product Management at PIP
- Tom Wagner, Vice President of R&D Manufacturing at PIP
- Andrew Ortman, Director of Product Marketing at PIP
- John Nanos, Nanosystems
- Personnel from Beta Analytic or other testing laboratories who conducted testing on PIP's BioSoft earplugs, including testing commissioned by Moldex;
- Representatives from customers who Moldex alleges would have purchased Moldex's products but for PIP's representations.

PIP is presently aware of the following key documents or things that relate to the key issues in the case: (i) testing conducted by Beta Analytic Testing Laboratory on the BioSoft Earplugs; (ii) testing conducted by DIN CERTCO Gesellschaft für Konformitätsbewertung mbH on the BioSoft Earplugs; (iii) carbon footprint analyses on the BioSoft Earplugs; (iv) Earthworm Acute Toxicity Test conducted on the BioSoft Earplug; (v) Cotoxic Effects on Higher Plants Test conducted on the BioSoft Earplug; (vi) Moldex's sales data in the last five years; and (vii) Moldex's

-4-

communications with customers that it contends it lost and PIP gained on account of the allegedly false marketing.

### E. Insurance

#### 1. Moldex

Moldex is unaware of any insurance coverage applicable to this dispute.

#### 2. PIP

PIP is unaware of any insurance coverage applicable to this dispute.

### F. Magistrate Judge

The parties do not consent to a magistrate judge presiding over this action for all purposes, including trial.

### G. Discovery

The parties do not propose any changes to the disclosures under Fed. R. Civ. P. 26(a)(1). The parties do not propose phasing discovery.

The parties are currently negotiating a protective order to govern discovery so that, if appropriate, the parties may designate materials produced in discovery as "Confidential" or "Highly Confidential – Attorneys' Eyes Only," with appropriate protections for such materials. PIP maintains that the protective order should contain a third confidentiality designation for "Highly Confidential – Outside Attorneys' Eyes Only," for numerous reasons. The parties continue to work through this dispute.

The parties exchanged their first round of written discovery requests in late November 2025.

#### 1. Discovery Subjects

##### a. Moldex

The general subjects on which Moldex may need discovery include, but are not limited to, all matters relating to:

- PIP's development, formulation, manufacturing, testing, marketing, advertising, and sale of BioSoft earplug products;

-5-

- Testing, studies, or analyses conducted or commissioned on BioSoft earplug products, including all substantiation evidence for any environmental claims such bio-based content, biodegradability, sustainability, compostability, carbon emissions, and other alleged environmental benefits;

- PIP's acquisition of the BioSoft product line from Final Fit Safety;

- Communications with distributors, customers, and retailers regarding BioSoft earplug products and environmental claims;

- PIP's efforts to revise marketing materials following correspondence with Moldex;

- Sales data, financial information, and market performance of BioSoft products;

- Customer inquiries, complaints, or feedback regarding alleged environmental attributes and benefits of BioSoft earplug products;

- Information relating to all issues raised by PIP's defenses and any counterclaims or affirmative defenses that may be asserted.

Moldex anticipates serving additional written requests for production of documents, interrogatories, and requests for admission in connection with these subjects. Moldex also anticipates taking depositions of PIP representatives and non-party percipient witnesses, including of PIP's suppliers, vendors, agents, distributors and customer representatives.

### b.    PIP

The general subjects on which PIP may need discovery include, but are not limited to, matters relating to:

- Testing conducted on the PIP BioSoft Earplugs that relates to the at-issue statements in the Amended Complaint, and communications related thereto;

- Documents and communication between Moldex and its customers regarding the BioSoft Earplugs, PIP, or Final Fit Safety;

-6-

- Documents relating to Moldex's assessment of the hearing protection market, including the impact of eco-friendly products on the market;
- Testing conducted on any of Modlex's hearing protection devices meant to evaluate those devices' eco-friendly or sustainable features;
- Documents relating to Moldex's assessment of the BioSoft Earplug product line as compared to any of Moldex's products;
- Documents relating to the sustainability or eco-friendliness of Moldex's product lineup;
- Documents and communications relating to Moldex's sales over the past five years, including any lost sales purportedly due to PIP and any analysis as to other factors that have impacted Moldex's change in sales over time; and
- Documents and communications relating to any customer inquires, complaints, or feedback regarding the eco-friendliness or sustainability of Moldex's products.

### 2.    Electronically Stored Information

The parties anticipate that they will agree to a suitable protocol for the search and production of electronically stored information, including production format, custodians, search terms, and metadata.

### 3.    Proposed Discovery Schedule

The parties propose the following discovery schedule:

| Event | Proposed Date |
| --- | --- |
| Initial Disclosures | January 21, 2026 |
| Fact Discovery Cutoff | September 28, 2026 |
| Opening Expert Disclosures | October 26, 2026 |
| Rebuttal Expert Disclosures | January 25, 2027 |
| Expert Discovery Cutoff | February 22, 2027 |

### 4.    Expert Witnesses

The parties anticipate that expert witnesses - may be necessary to address:

-7-

- Testing methodology and interpretation of bio-based content testing results (ASTM D6866);
- Industry standards for environmental marketing claims, including FTC Green Guides compliance and EN 13432 certification standards;
- Market analysis, consumer behavior, and competitive harm in the foam earplug market;
- Damages calculations, including lost profits and unjust enrichment.

**H.    Motions**

### 1.    Moldex

Moldex does not anticipate filing any motions to add parties at this time. Moldex reserves the right to file a motion to add claims or amend its complaint after it has conducted discovery and further investigates matters relating to the claims and defenses asserted herein.

### 2.    PIP

PIP does not anticipate filing any motions to add parties at this time. In addition to its pending Motion to Dismiss, PIP anticipates that the following Motions may become ripe at the close of fact or expert discovery:

- Rule 702/*Daubert* Motions
- Motion for Summary Judgment

PIP reserves the right to file a motion to add or amend any counterclaims after it has conducted discovery and further investigates matters relating to the claims and defenses asserted herein.

**I.    Class Certification**

Not applicable.

**J.    Dispositive/Rule 702 Motions**

The parties agree that until they have had an opportunity to conduct and complete discovery, it is difficult to evaluate whether dispositive motions will be filed or the issues they may raise in such motions.

-8-

If such motions become necessary, the proposed deadline for the filing of opening dispositive and Rule 702 motions is March 22, 2027.

### K.   Settlement/Alternative Dispute Resolution (ADR)

The parties have had preliminary discussions regarding settlement.

Pursuant to Local Rule 16-15.4, the parties are amenable to ADR Procedure No. 3 (private mediation).  The proposed deadline for participating in mediation is August 5, 2026.

### L.   Pretrial Conference & Trial

The parties propose a pretrial conference in late June 2027 and a trial date in early July 2027, subject to the Court's calendar and availability.

### M.   Trial Estimate

Until they have had an opportunity to conduct and complete discovery, it is difficult to estimate the number of witnesses that each side may call at trial. The parties estimate that the trial will require 4 court days.

### N.   Trial Counsel

#### 1.   Moldex

Moldex will be represented at trial by Joseph M. Paunovich, Kade A. Allred, Carly Fein, and other attorneys from Quinn Emanuel Urquhart & Sullivan, LLP.

#### 2.   PIP

PIP will be represented at trial by Jay Bhimani, Allison Ozurovich, Craig Castiglia, and Allison DeJong from Dechert LLP.

### O.   Independent Expert or Master

The parties do not, at this time, request appointment of a master pursuant to Federal Rule of Civil Procedure 53 or an independent scientific expert.

### P.   Other Issues

The parties are presently aware of no other issues to identify for the Court's attention.

-9-

Dated:  January 15, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ Joseph M. Paunovich
Joseph M. Paunovich (Bar No. 228222)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100
joepaunovich@quinnemanuel.com

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Fax: (801) 515-7400

*Attorneys for Plaintiff Moldex-Metric, Inc.*

-10-

DECHERT LLP

By: /s/ Jay Bhimani
Jay Bhimani (SBN 267689)
jay.bhimani@dechert.com
Allison K. Ozurovich (SBN 312797)
allie.ozurovich@dechert.com
Allison M. DeJong (SBN 363033)
allison.dejong@dechert.com
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

Craig Castiglia (*pro hac vice*)
craig.castiglia@dechert.com
2929 Arch Street
Philadelphia, PA 19104-2802
Telephone: (215) 994-4000

*Attorneys for Protective Industrial Products, Inc.*

-11-