QUINN EMANUEL URQUHART & SULLIVAN, LLP
Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Fax: (801) 515-7400

*Attorneys for Plaintiff Moldex-Metric. Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOLDEX-METRIC, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROTECTIVE INDUSTRIAL PRODUCTS, INC., a New York corporation,<br><br>Defendant. | Case No. 2:25-cv-08931-FMO-E<br><br>**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE CHARLES F. EICK]**<br><br>**NOTICE OF MOTION AND LOCAL RULE 37-2 JOINT STIPULATION REGARDING PLAINTIFF'S REQUESTS FOR PRODUCTION**<br><br>Date: April 24, 2026<br>Time: 9:30 a.m.<br>Courtroom: 750<br><br>Discovery: July 20, 2026<br>Trial Date: February 9, 2027 |

PLEASE TAKE NOTICE that on April 24, 2026 at 9:30 a.m. in Courtroom 750 of this Court, Plaintiff Moldex-Metric, Inc. will move, and hereby does move, under Federal Rule of Civil Procedure 37(a)(3)(B) for this Court to enter an order compelling Defendant Protective Industrial Products, Inc. to produce documents responsive to the full scope of Moldex's First Set of Requests for Production.

Moldex's motion is made pursuant to this Notice of Motion, the attached Joint Stipulation, and any additional arguments or materials that may be submitted to this Court before the time of its decision.

In accordance with Local Rule 37-1, Moldex and PIP make this motion following multiple conferences of counsel, including meet-and-confer sessions held via video call on January 7, 2026 and January 20, 2026, and written correspondence exchanged on January 9, 2026, January 12, 2026, January 14, 2026, January 27, 2026, January 29, 2026, February 2, 2026, February 5, 2026, and February 7, 2026. The conferences and correspondence did not produce a resolution, and the parties remain at an impasse.

# TABLE OF CONTENTS

**Page**


I. MOLDEX'S INTRODUCTORY STATEMENT .......... 1

II. PIP'S INTRODUCTORY STATEMENT .......... 3

III. ISSUES IN DISPUTE .......... 3

A. PIP's General Objection No. 3: "Environmental Claims" Limitation .......... 6

1. PIP's General Objection No. 3 and Supplemental Response .......... 6

2. Moldex's Contentions and Proposed Resolution .......... 7

3. PIP's Contentions and Proposed Resolution .......... 14

B. Request For Production No. 1 .......... 19

1. Moldex's Request and PIP's Response .......... 19

2. Moldex's Contentions and Proposed Resolution .......... 21

3. PIP's Contentions and Proposed Resolution .......... 21

C. Request For Production No. 2 .......... 21

1. Moldex's Request and PIP's Response .......... 22

2. Moldex's Contentions and Proposed Resolution .......... 22

3. PIP's Contentions and Proposed Resolution .......... 23

D. Request For Production No. 3 .......... 23

1. Moldex's Request and PIP's Response .......... 23

2. Moldex's Contentions and Proposed Resolution .......... 24

3. PIP's Contentions and Proposed Resolution .......... 24

E. Request for Production No. 4 .......... 25

1. Moldex's Request and PIP's Response .......... 25

2. Moldex's Contentions and Proposed Resolution .......... 26

3. PIP's Contentions and Proposed Resolution .......... 26

F. Request for Production No. 5 .......... 26

1. 2Moldex's Request and PIP's Response .......... 27

2. Moldex's Contentions and Proposed Resolution ........................ 28

3. PIP's Contentions and Proposed Resolution .............................. 28

G. Request for Production No. 6 ........................................................ 28

1. Moldex's Request and PIP's Response ..................................... 28

2. Moldex's Contentions and Proposed Resolution ........................ 29

3. PIP's Contentions and Proposed Resolution .............................. 29

H. Request for Production No. 7 ........................................................ 30

1. Moldex's Request and PIP's Response ..................................... 30

2. Moldex's Contentions and Proposed Resolution ........................ 31

3. PIP's Contentions and Proposed Resolution .............................. 31

I. Request for Production No. 8 ........................................................ 31

1. Moldex's Request and PIP's Response ..................................... 31

2. Moldex's Contentions and Proposed Resolution ........................ 32

3. PIP's Contentions and Proposed Resolution .............................. 32

J. Request for Production No. 9 ........................................................ 33

1. Moldex's Request and PIP's Response ..................................... 33

2. Moldex's Contentions and Proposed Resolution ........................ 34

3. PIP's Contentions and Proposed Resolution .............................. 34

K. Request for Production No. 10 ...................................................... 34

1. Moldex's Request and PIP's Response ..................................... 34

2. Moldex's Contentions and Proposed Resolution ........................ 35

3. PIP's Contentions and Proposed Resolution .............................. 36

L. Request for Production No. 11 ...................................................... 37

1. Moldex's Request and PIP's Response ..................................... 37

2. Moldex's Contentions and Proposed Resolution ........................ 38

3. PIP's Contentions and Proposed Resolution .............................. 39

M. Request for Production No. 12 ...................................................... 39

1. Moldex's Request and PIP's Response ..................................... 39

2. Moldex's Contentions and Proposed Resolution ........................ 40

3. PIP's Contentions and Proposed Resolution ............................. 40

N. Request for Production No. 13 .......................................................... 41

1. Moldex's Request and PIP's Response ..................................... 41

2. Moldex's Contentions and Proposed Resolution ........................ 41

3. PIP's Contentions and Proposed Resolution ............................. 42

O. Request for Production 14 ................................................................ 43

1. Moldex's Request and PIP's Response ..................................... 43

2. Moldex's Contentions and Proposed Resolution ........................ 44

3. PIP's Contentions and Proposed Resolution ............................. 44

P. Request for Production No. 15 .......................................................... 45

1. Moldex's Request and PIP's Response ..................................... 45

2. Moldex's Contentions and Proposed Resolution ........................ 46

3. PIP's Contentions and Proposed Resolution ............................. 46

Q. Request for Production No. 16 .......................................................... 46

1. Moldex's Request and PIP's Response ..................................... 46

2. Moldex's Contentions and Proposed Resolution ........................ 47

3. PIP's Contentions and Proposed Resolution ............................. 47

R. Request for Production No. 17 .......................................................... 48

1. Moldex's Request and PIP's Response ..................................... 48

2. Moldex's Contentions and Proposed Resolution ........................ 48

3. PIP's Contentions and Proposed Resolution ............................. 49

S. Request for Production 18 ................................................................ 49

1. Moldex's Request and PIP's Response ..................................... 49

2. Moldex's Contentions and Proposed Resolution ........................ 50

3. PIP's Contentions and Proposed Resolution ............................. 52

T. Request for Production No. 19 .......................................................... 55

1. Moldex's Request and PIP's Response ..................................... 55

2. Moldex's Contentions and Proposed Resolution ....................... 56

3. PIP's Contentions and Proposed Resolution ............................. 57

U. Request for Production No. 20 ........................................................ 59

1. Moldex's Request and PIP's Response .................................... 59

2. Moldex's Contentions and Proposed Resolution ....................... 60

3. PIP's Contentions and Proposed Resolution ............................. 60

V. Request for Production No. 21 ........................................................ 60

1. Moldex's Request and PIP's Response .................................... 60

2. Moldex's Contentions and Proposed Resolution ....................... 61

3. PIP's Contentions and Proposed Resolution ............................. 62

W. Request for Production No. 22 ........................................................ 63

1. Moldex's Request and PIP's Response .................................... 63

2. Moldex's Contentions and Proposed Resolution ....................... 63

3. PIP's Contentions and Proposed Resolution ............................. 64

X. Request for Production No. 23 ........................................................ 64

1. Moldex's Request and PIP's Response .................................... 64

2. Moldex's Contentions and Proposed Response ......................... 65

3. PIP's Contentions and Proposed Response ............................... 65

Y. Request for Production No. 24 ........................................................ 66

1. Moldex's Request and PIP's Response .................................... 66

2. Moldex's Contentions and Proposed Resolution ....................... 66

3. PIP's Contentions and Proposed Resolution ............................. 67

Z. Request for Production No. 25 ........................................................ 67

1. Moldex's Request and PIP's Response .................................... 67

2. Moldex's Contentions and Proposed Resolution ....................... 68

3. PIP's Contentions and Proposed Resolution ............................. 68

AA. Request for Production No. 26 ........................................................ 69

1. Moldex's Request and PIP's Response .................................... 69

2. Moldex's Contentions and Proposed Resolution ..................... 69
3. PIP's Contentions and Proposed Resolution ..................... 70
BB. Request for Production No. 27 ..................... 70
1. Moldex's Request and PIP's Response ..................... 70
2. Moldex's Contentions and Proposed Resolution ..................... 71
3. PIP's Contentions and Proposed Resolution ..................... 71
CC. Request for Production No. 28 ..................... 72
1. Moldex's Request and PIP's Response ..................... 72
2. Moldex's Contentions and Proposed Resolution ..................... 72
3. PIP's Contentions and Proposed Resolution ..................... 73
DD. Request for Production No. 29 ..................... 74
1. Moldex's Request and PIP's Response ..................... 74
2. Moldex's Contentions and Proposed Resolution ..................... 75
3. PIP's Contentions and Proposed Resolution ..................... 75
EE. Request for Production No. 30 ..................... 76
1. Moldex's Request and PIP's Response ..................... 76
2. Moldex's Contentions and Proposed Response ..................... 76
3. PIP's Contentions and Proposed Response ..................... 76
IV. Conclusion ..................... 767

## I. MOLDEX'S INTRODUCTORY STATEMENT

Moldex filed its complaint in September 2025 and served its First Set of Requests for Production on November 26, 2025, less than a week after discovery opened under this Court's Standing Order. PIP responded to Moldex's requests on December 26, 2025, without producing a single document. In nearly three months since discovery opened, PIP has produced only a few dozen documents (most of which Moldex already had before this lawsuit was filed) and refuses to produce relevant documents and communications based on several unsupportable objections. The parties met and conferred on January 7 and January 20, 2026, and exchanged written correspondence on January 9 and 29, and February 2, 5, and 6 concerning PIP's objections and production. Unable to reach a resolution, Moldex is filing this motion to timely resolve certain disputes before the discovery cutoff.

As background, this is a false advertising case. Moldex accuses PIP of a calculated "greenwashing" scheme to capture market share from Moldex and other competitors in the hearing protection industry. Independent lab testing shows that PIP intentionally misleads and deceives distributors, downstream purchasing companies, and end users by falsely advertising that PIP's BioSoft earplug products are made from "82% bio-based" material, "decompose 76% in 180 days," and have numerous other unqualified, alleged environmental benefits, examples of which are described in Moldex's complaint. These false statements are found in PIP's marketing on its website, sales brochures, and other materials. However, PIP's greenwashing scheme is pervasive and also includes private communications with customers about these and other false and misleading alleged environmental benefits of the BioSoft products. Moldex seeks discovery on the entirety of PIP's greenwashing scheme, not just documents that include the verbatim statements in Moldex's complaint.

But PIP refuses to search for or produce documents or communications that do not contain the verbatim statements quoted in paragraphs 35-43 of Moldex's

complaint, which it unilaterally defines as the "Environmental Claims" at issue in the lawsuit, to limit discovery on relevancy grounds. Neither Moldex's complaint nor its written discovery is limited to the so-called "Environmental Claims," and relevancy under FRCP 26(b)(1) is broad.

Liability in this case will turn on the overall net impression PIP's false and misleading greenwashing campaign creates, not selected verbatim statements extracted from a complaint. How PIP positions its BioSoft products to distributors and customers, how it compares BioSoft to competing products, and what PIP's internal and private external documents and communications reveal about its strategy and knowledge of falsity are all highly relevant to Moldex's alleged claims. The statements quoted in Moldex's complaint are simply examples of PIP's broader greenwashing campaign, not an exhaustive inventory of the false and deceptive statements in PIP's environmental marketing of BioSoft products.

PIP also refuses to produce documents or communications with its distributors and customers about Moldex and competitive polyurethane earplugs generally or any internal or external private communications about alleged environmental features and advertising of BioSoft products (e.g., inquiries, feedback, and complaints about alleged environmental product features). PIP has only agreed to produce documents *sufficient to show* communications with the two customers that Moldex specifically alleged in its complaint were diverted from Moldex's competing products as a result of PIP's false Environmental Claims.

These limitations and others PIP unilaterally seeks to impose on discovery are improper. Moldex's written discovery requests seek information squarely relevant to its alleged claims and PIP has not articulated any proportionality objections. Nor could it—PIP acquired and launched the at issue BioSoft products (4 SKUs) just over two years ago and these products represent a tiny fraction of PIP's earplug business. As such, Moldex seeks an order overruling PIP's objections and compelling it to

produce documents and communications responsive to the full scope of Moldex's Requests for Production Nos. 1-30.

In addition to the above, PIP is improperly withholding production of business, marketing, and financial documents on the grounds that it must first evaluate what "similar" documents Moldex produces in this litigation. This is nothing more than a delay tactic. Moldex's business and marketing—which does not include false or misleading environmental claims—is not at issue in this lawsuit and, in any event, PIP's discovery obligations under the Federal Rules are not limited by or linked to Moldex's ongoing document productions in this case.[1] Accordingly, Moldex seeks an order overruling PIP's objections attempting to limit its productions based on Moldex's productions and compelling PIP to produce documents and communications responsive to the full scope of Moldex's Requests for Production Nos. 18, 21-25, and 30 upon which it purports to limit its production on this ground.

## II. PIP'S INTRODUCTORY STATEMENT

Moldex's joint stipulation paints an inaccurate picture of the discovery landscape. Specifically, Moldex characterizes the status of discovery as follows:

- In the "three months since discovery has opened PIP has produced only a few dozen documents";
- PIP seeks to "unilaterally" limit discovery, "refuses to produce relevant documents and communications," and is "improperly withholding" certain documents, including financial discovery; and
- PIP "refuses to search for or produce documents or communications that do not contain the verbatim statements quoted in paragraphs 35-43 of Moldex's complaint."

The truth is much different. PIP has agreed to produce documents responsive to all but a few of the 30 Requests challenged herein. To date, PIP has produced more than

---

[1] Moldex made an initial production on December 22, 2025 and a subsequent production on February 20, 2026, and plans ongoing productions.

80 documents spanning 372 pages—a number relatively equivalent to the 278 pages produced by Moldex (of which 81 pages are PIP's own public-facing marketing). PIP's produced documents include testing commissioned by PIP on the BioSoft product line to substantiate the environmental attributes that are at issue in this case as well as documents evidencing its profits and revenues from the product line through the filing of the Complaint. In other words, PIP has already produced documents that go to the core issues in this case and that meaningfully move this litigation forward. The parties have also engaged in a mutual exchange of search terms and custodians that continue to be negotiated. And from there, PIP has promised completion of its document production on May 7, 2026—nearly two months in advance of the July 20, 2026 fact discovery deadline. In short, at each step, PIP has proceeded in good faith and in accordance with the Federal Rules of Civil Procedure.

Though Moldex's position statement suggests otherwise, the scope of the parties remaining dispute is narrow and primarily challenges two of PIP's remarkably unremarkable positions: (1) PIP has agreed to produce—and *has started producing*—relevant, non-privileged documents *related to* the claims Moldex has put at issue in the FAC; and (2) PIP has agreed to produce—and *has produced*—relevant non-privileged financial documents, but has requested that the parties come to a mutual agreement on the scope of that financial discovery. Yet even though PIP has promised to proceed in accordance with all that is required under the Federal Rules of Civil Procedure, Moldex filed this motion anyway. Moldex's motion should be denied.

***First***, Moldex argues that PIP has "refuse[d] to search for or produce documents or communications that do not contain the verbatim statements quoted in paragraphs 35-43" of the FAC. That is not true. PIP has repeatedly clarified—and does so again here—that it will produce documents "*related* to the Environmental Claims," *i.e.* the environmental statements regarding the BioSoft product line that Moldex challenges as false or misleading. In other words, PIP has agreed to produce documents *related* to the allegations in the FAC. That makes sense; "the allegations

in a complaint generally dictate what evidence is discoverable." *Trabulsi v. Wells Fargo Bank, Nat'l Ass'n*, Case No. 8:17-cv-02088-JLS-SK, 2018 WL 6444892, at *2 (C.D. Cal. Aug. 21, 2018). But what Moldex requests goes beyond the allegations of the FAC, seeking information about anything and everything related to the BioSoft product line, simply because Moldex has filed a lawsuit against PIP and regardless of whether those documents have anything to do with the environmental statements at issue in this case or the environmental properties of PIP's BioSoft product line at all. But nowhere do the Federal Rules contemplate such broad-sweeping discovery untethered to the claims and defense at issue in the case. Indeed, Moldex's responses to PIP's discovery make the point. Moldex routinely committed only to producing documents "expressly concerning PIP's Biosoft earplug products[.]" Ozurovich Decl., Ex. 4, Moldex R&Os at No. 2. Moldex cannot credibly square its argument that a document production *relating to* the allegations of the FAC somehow runs afoul of the Federal Rules while limiting its production only to those documents that *expressly concern* the BioSoft product line.

It is for this reason that PIP proposed, and the parties adopted, a mutual process governing the exchange of search terms so that both parties could propose terms targeted to the core issues and defenses in this claim and ensure that information related to those issues are appropriately captured. Those proposed search terms, which are still being negotiated, are much broader than the "verbatim" claims in the FAC and belie Moldex's position that PIP has agreed only to produce documents that speak to the verbatim statements in the FAC. At no time has PIP "withheld" or "unilaterally" limited discovery.

***Second***, Moldex's other main dispute centers on PIP's request that, given Moldex's overly broad requests on financial discovery, the parties develop a reciprocal process to ensure they are producing financial information that is commensurate with one another. Here again, Moldex mischaracterizes PIP's position. PIP has not sought to improperly "condition" its production of financial discovery on

Moldex's production of similar information. On the contrary, PIP is the only party to have produced any financial discovery, notwithstanding the fact that it has pending discovery requests on Moldex for similar information and has received nothing. Even still, all that PIP has proposed is that the parties "consider the proportionality of all discovery" propounded on all parties "and consider it in resolving discovery disputes." *Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656 (D. Mont. 2018) (internal quotations omitted). Thus, as explained in PIP's forthcoming motion to compel, PIP does not object to the production of a reciprocal set of relevant financial documents. But it requests that, to the extent this Court grants Moldex's motion to compel PIP's financial discovery, the Court's order apply reciprocally to Moldex's production of the same.

***Third***, the remaining disputes are without merit, each of which are addressed in turn below.

In sum, PIP has participated in the discovery process in good faith and has committed to produce documents that speak to the core issues underlying Moldex's allegations. Its only request is that the parties operate within the same parameters and consistent with their obligations to proceed in a proportionate and orderly fashion under the Federal Rules. Moldex's motion should be denied.

## III. ISSUES IN DISPUTE

### A. PIP's General Objection No. 3: "Environmental Claims" Limitation

#### 1. PIP's General Objection No. 3 and Supplemental Response

*General Objection No. 3*: PIP objects to Moldex's Requests to the extent they seek documents or information concerning any marketing or advertising statement made by PIP beyond those that Moldex specifically identifies in the Amended Complaint. Such requests are overbroad, unduly burdensome, and not relevant to Moldex or its claims. For purposes of PIP's Responses to these Requests, the term "Environmental Claims" shall mean only the marketing statements Moldex has put at issue in this case, namely those identified in Amended Complaint ¶¶ 35-43.

*PIP'S Supplemental Response to General Objection 3 (Feb. 6, 2026)*: Moldex's Amended Complaint puts at issue statements relating to four categories of environmental attributes of the BioSoft Earplugs, namely its: bio-based content; decomposition and/or biodegradability; associated carbon emissions; and "eco-friendly" and "sustainable" features. Accordingly, Moldex's attempt to expand discovery to encompass "any other environmental claims"—without any connection to the allegedly false statements identified in the Amended Complaint, let alone the environmental attributes to which those statements relate—is not appropriate. Notwithstanding PIP's objection, it will review the search terms proposed by Moldex and remains willing to meet and confer to the extent any proposed terms are disputed on this basis. Allred Decl., Ex. 3 at 2.[2]

### 2. Moldex's Contentions and Proposed Resolution

Moldex is raising its dispute regarding PIP's General Objection No. 3 because this is PIP's sole objection raised with respect to most of Moldex's First Set of Requests for Production. Accordingly, Moldex submits that a decision on this objection will resolve most, if not all, of the disputes set forth herein.

At bottom, PIP's General Objection No. 3 is a relevancy objection. First, PIP unilaterally manufactured a new definition in its responses to Moldex's discovery requests: "Environmental Claims," which PIP incorrectly contends are the "only marketing statements Moldex has put at issue in this case, namely those identified in Amended Complaint ¶¶ 35-43." This Environmental Claims "definition" is not found in Moldex's requests or complaint. Second, PIP applied its self-serving definition to limit the scope of discovery across every single one of Moldex's Requests,[3] to

[2] PIP's February 6 response letter was in response to Moldex's January 29 letter. Allred Decl., Ex. 2.

[3] PIP applied its improper "Environmental Claims" definition as a production ceiling across virtually every RFP response, including RFPs 1-30. The arguments set forth in this section apply to each of these requests.

documents and communications relating to the "Environmental Claims"—meaning documents that concern only the following discrete set of quoted statements:

- BioSoft is "the world's first sustainable bio-based ear plug" (¶ 37);
- BioSoft is "eco-friendly," "sustainable," "bio-based," and part of an "eco-series" (¶ 38);
- BioSoft will "decompose 76% in 180 days" while traditional earplugs "remain unchanged" (¶ 39);
- BioSoft emits "5.6 times less $CO_2$ compared to traditional polyurethane foam earplugs" (¶ 39);
- BioSoft generates "17.49 lbs carbon equivalent emissions per 10,000 pairs" (¶ 39);
- BioSoft is "82% bio-based" (¶ 39); and
- BioSoft offers a "lower carbon footprint," "reduce[d] emissions," and is "more environmentally friendly" (¶ 39).

However, as explained below, none of Moldex's requests nor its complaint are limited to this discrete set of quoted statements. As a result, PIP's attempt to narrow Moldex's discovery based on relevance to the so-called "Environmental Claims" contradicts the Federal Rules. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Relevance is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)). Moldex's requests readily satisfy this standard, as they seek documents bearing directly on the core issues relevant to PIP's false and misleading greenwashing campaign for its BioSoft product line, such as falsity, materiality, and damages in this case.

For example, Request No. 3 seeks "documents relating to [PIP's] acquisition of the BioSoft Earplugs product line from Final Fit Safety or any predecessor entity, including but not limited to . . . due diligence materials, including financial records, product specifications, and testing data received or reviewed in connection with the acquisition." PIP is attempting to limit that request to documents relating to the specific marketing statements it has designated as "Environmental Claims"—the discrete set of quoted statements identified in Amended Complaint paragraphs 35-43. But whether BioSoft's bio-based content matched PIP's marketing claims is the central factual issue in this case, and documents reflecting what PIP investigated and learned about the product's actual composition and testing history when it acquired the product line are directly relevant to that question, whether or not they relate to those specific quoted statements.

The same is true of Request No. 10, which seeks "documents relating to any certifications, applications for certification, or correspondence with certification bodies . . . regarding BioSoft Earplugs." PIP's own July 7, 2025 letter attached to Moldex's Amended Complaint acknowledges that BioSoft failed to meet the EN 13432 certification threshold, an admission the Amended Complaint cites as direct evidence of knowing falsity. Allred Decl., Ex. 1. Whether PIP sought, failed to obtain, or was denied environmental-related certifications for BioSoft goes directly to what PIP knows or should have known about the false and misleading nature of its claims. Its relevance does not turn on whether the underlying correspondence relates to the specific categories PIP has designated as "Environmental Claims."

As another example, Request No. 25 seeks "documents relating to [PIP's] business strategies for BioSoft Earplugs, including positioning in the market, target customers, and competitive advantages claimed or anticipated." The BioSoft product line's entire market identity was built on its supposed environmental superiority. Documents reflecting how PIP developed and deployed that environmental positioning bear directly on why PIP made the claims it did, who it targeted with them,

and how it knew those claims were false—none of which depends on whether the documents fall within PIP's narrow "Environmental Claims" definition.

Moldex's requests are also proportional to the needs of this case. The most probative documents in this case exist solely in PIP's possession, and the relevant discovery concerns a single product line (4 SKUs) that PIP has owned and marketed for just over two years. Moreover, Moldex's discovery requests are focused on critical facts relating to this product line (e.g., alleged environmental features and benefits, formulation information, testing and certifications, customer communications, and sales) that are facially relevant to the alleged claims. Nor has PIP articulated any concrete or specific burden in responding to Moldex's requests. Each of these facts demonstrates proportionality to the needs of the case and weighs in favor of production. *See* Fed. R. Civ. P. 26(b)(1).

On the financial records, Moldex seeks disgorgement of PIP's profits under 15 U.S.C. § 1117(a), which expressly provides that a prevailing plaintiff in a false advertising action may recover "defendant's profits" as a remedy, measured by the defendant's gross sales attributable to the false advertising activity rather than by the plaintiff's specific losses. Request No. 18 seeks "[a]ll documents relating to financials for [the] BioSoft Earplugs product line since the inception of the product line to present, including but not limited to revenue, units sold, profit and losses, costs, return on acquisition investment, convoyed and pull-through sales"—precisely the records needed to calculate that remedy. The burden of producing financial records relating to the BioSoft product line is likely nonexistent—PIP can simply query its electronic financial reporting system for the products or request such documents from its employees that handle financials.

These categories of documents are substantially, if not entirely, in PIP's sole possession. Request No. 14 seeks "[a]ll documents relating to the development, review, approval, or modification of bio-based, decomposition, biodegradability, compostability, sustainability, carbon emissions, or any other environmental claims

or messaging for BioSoft Earplugs." PIP's internal deliberations about what environmental claims to make, how to substantiate them, and whether to revise them since acquiring the product line are documents only PIP holds. Moldex has no alternative means of obtaining these documents, and PIP's sole access to it weighs strongly in favor of production. *See Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *11 (S.D. Cal. June 12, 2013) ("recognizing that 'the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.'" (citing *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).

As to burden, PIP acquired the BioSoft product line just over two years ago, and the requests concern a single product line consisting of four SKUs. This is a fraction of PIP's overall business. "The party opposing discovery has the burden of showing that any challenged discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections." *Pangborn v. Los Angeles Cnty. Deputy Sheriffs Lieutenant Baudino*, 2018 WL 6265055, at *2 (C.D. Cal. Sept. 27, 2018). PIP has not identified any specific burden associated with any specific request that would render Moldex's discovery disproportionate to the needs of this case. Given the limited time frame and narrow scope of the relevant product line, PIP's boilerplate objections fall well short of that showing.

PIP's "Environmental Claims" limitation should be rejected. PIP has no authority to substitute its own desired scope of discovery defined by its term "Environmental Claims." PIP must respond to Moldex's requests as written. *See, e.g.*, *Chapman v. California Dep't of Educ.*, 2002 WL 32854376, at *3 (N.D. Cal. Feb. 6, 2002) ("The proponent of discovery is the master of its terms. So long as the information sought is within the broad bounds of relevancy as set forth in Rule 26 and is otherwise properly discoverable, the respondent may not unilaterally reshape or

rephrase the discovery request.").[4] Indeed, in false advertising cases like this one, the scope of relevant discovery is not confined to the specific statements identified in the complaint. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1104-05 (C.D. Cal. 2023) (declining to limit false advertising claims to statements specifically pleaded where complaint identified those statements as exemplary and discovery revealed additional ones); *InSinkErator, LLC v. Joneca Co.*, 163 F.4th 608, 616 (9th Cir. 2025) (scope of allegedly false advertising claim determined in full context, not limited to isolated statements).

False advertising liability, and by extension the scope of discovery, is not assessed or limited to isolated statements in a vacuum—it is based on the net impression created by a defendant's advertising campaign as a whole. *See Stout v. FreeScore, LLC*, 743 F.3d 680, 685 (9th Cir. 2014) (advertisements must be interpreted by the "overall net impression … to determine what message a viewer may reasonably ascribe to it"); 16 C.F.R. § 260.1(d) ("Whether a particular claim is deceptive will depend on the net impression of the advertisement, label, or other promotional material at issue."). The Ninth Circuit has repeatedly held that courts must evaluate the "message conveyed" by advertising "in its entirety," not isolated words and phrases. *See Fed. Trade Comm'n v. Am. Fin. Benefits Ctr.*, 2018 WL 11354861, at *8 (N.D. Cal. Nov. 29, 2018) ("'Deception may be found based on the 'net impression' created by a representation,' rather than isolated words and phrases.") (citing *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009)).

[4] *See also United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2025 WL 1900944, at *2 (D. Ariz. July 1, 2025) ("[T]he allegations in a complaint generally dictate what evidence is discoverable ... [but] the scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint. The proper inquiry instead is whether the information sought is relevant to the parties' claims and defenses and proportional to the needs of the case.").

Here, PIP's liability turns on the net impression of its entire false advertising campaign—a "calculated 'greenwashing' scheme to capture foam earplug market share through false and misleading environmental claims." Allred Decl., Ex. 1. Paragraphs 37 through 43 provide concrete examples of PIP's campaign. But those specific statements are illustrations of the broader campaign, not an exhaustive inventory of every false and misleading statement PIP made. Paragraph 109 separately alleges that PIP "has made and continues to make false and unsubstantiated environmental marketing claims about its BioSoft products, including claims about bio-based content, biodegradability, carbon emissions, and general environmental benefits."

Moldex's discovery requests are consistent with and seek relevant discovery concerning PIP's entire greenwashing campaign. For example, Moldex's Request for Production Nos. 19 (customer communications regarding BioSoft's environmental claims and messaging), 21 (market research, customer surveys, or competitive analysis regarding customer demand for environmentally friendly or sustainable hearing protection products), and 28 (documents concerning PIP's awareness that distributors or other third parties expanded or amplified BioSoft's environmental claims) seek documents concerning PIP's overall environmental marketing of the BioSoft line, i.e., the full picture of how it was developed, communicated to customers and distributors across all channels, how it influenced purchasing decisions, which products and companies it targeted for diversion, and other issues bearing on liability and damages in this case. PIP's false and misleading greenwashing campaign is not confined to the handful of statements PIP has chosen to designate as the "Environmental Claims."

Instead, it comes from the totality of PIP's false and misleading marketing efforts: sales presentations to distributors emphasizing BioSoft's environmental benefits, internal and external documents and communications positioning BioSoft as the "eco-friendly" alternative to traditional foam earplugs, packaging and product

literature highlighting "bio-based" content and biodegradability, communications with customers explaining why PIP believes BioSoft is better for the environment than competing products, and strategy documents showing PIP deliberately built the BioSoft brand around false environmental superiority. Documents showing that PIP marketed BioSoft as environmentally superior beyond the specific statements quoted in the FAC are plainly relevant to falsity, materiality, and damages.[5]

In sum, Moldex should be granted discovery to prove the full scope of PIP's false advertising campaign and, therefore, should not be limited to documents and information related to PIP's defined term "Environmental Claims."

*Moldex's Proposed Resolution*: At the meet and confer, Moldex proposed that PIP withdraw its "Environmental Claims" limitation and produce documents responsive to Moldex's Requests as written. PIP declined. Moldex requests an order overruling PIP's General Objection No. 3 and compelling PIP to respond to Moldex's requests without limiting its search or production to documents relating only to the specific marketing statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

Moldex's primary dispute as to General Objection No. 3—the sole dispute underlying 17 of the responses Moldex challenges herein—is based on the notion that PIP will only produce "documents that include the ***verbatim*** statements in Moldex's complaint." That is a limitation nowhere to be found in PIP's Responses and mischaracterizes PIP's position—something that PIP has repeatedly corrected over the course of the parties' extensive meet and confers. *See, e.g.*, Allred Decl., Ex. 3, Feb. 6, 2026 Letter from C. Castiglia at 2; Ozurovich Decl., Ex. 5, Feb. 19, 2026 Email from A. Ozurovich at 2. On the contrary, PIP's response makes clear that it has

[5] PIP also objects throughout its responses that documents are "not relevant to Moldex or the Environmental Claims." To the extent this is intended as an objection independent of the "Environmental Claims" definition, it fails for the same reasons set forth above.

promised exactly what the Federal Rules require, *i.e.* a production of documents that ***relate*** to the allegations in the FAC:

> Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, ***PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims*** and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

To be sure, Moldex concedes that "the allegations in a complaint generally dictate what evidence is discoverable." *Supra* n. 4 (*citing United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2025 WL 1900944, at *2 (D. Ariz. July 1, 2025)); *see also Trabulsi*, 2018 WL 6444892, at *1; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.") And while it may also be true that "the scope of permissible discovery is not based solely on whether a transaction is ***expressly*** mentioned in the complaint," *supra* n. 4 (*citing Carvana Co.*, 2025 WL 1900944, at *2), that is not the issue that this court is presented with or that is implicated by PIP's responses.

*Trabulsi* is instructive. There, the complaint "center[ed] on whether Wells Fargo violated any duty it may have owed" related to plaintiff's high-yield savings account. 2018 WL 6444892, at *2. Wells Fargo agreed to produce documents related to the at-issue account, but objected that documents related to other accounts in plaintiff's name—but not at issue in the complaint—were irrelevant. The court agreed with the defendant, finding plaintiff's view that "relevance of the additional [] accounts" could "be inferred from" the complaint "fundamentally flawed." *Id.* at *1. The court explained:

> If what Plaintiff means to argue is that she is entitled to discovery about the additional Trabulsi accounts because they are relevant to the subject matter of the Complaint, that view is no longer acceptable in federal discovery practice***: relevance is foremost tied to the parties' claims and***

> ***defenses, not the general subject matter of the action***, and even then, relevant discovery must be proportional to the needs of the case.

*Id.* (emphasis added) (citing Fed. R. Civ. P. 26(b) Advisory Committee's Notes to 2000 and 2015 Amendment). So too here. The allegations in the FAC—and not an unidentified universe of statements "inferred from the complaint" that may or may not relate to the *general subject matter of the action*—govern the scope of relevant discovery.

An example makes the point. In its motion, Moldex highlights Request for Production No. 3 as exemplary[6] of the issue with PIP's promise to produce documents within the scope of the allegations of the FAC. That request, however, seeks a plethora of information, including "[a]ll": "[p]urchase agreements, asset purchase agreements, or acquisition contracts," "[c]ommunications between You and Final Fit Safety," "[d]ue diligence materials, including financial records, product specifications, and testing data received or reviewed in connection with the acquisition," and "[a]ll testing data or test reports provided by Final Fit Safety or NanoSystems, Inc. to You before, during, or after the acquisition."

As Moldex would have it, then, if representatives from PIP and Final Fit Safety exchanged the BioSoft product line's testing on other features of the product, such as the noise reduction rating, that would be captured by the Request. In-depth financial metrics and intricate details regarding the terms of the acquisition—highly sensitive information that is wholly unrelated to the BioSoft product line's environmental features —would be captured by the Request. Any discussions between PIP and Final Fit Safety whatsoever would be captured by the Request. But under no set of facts would all of this information be relevant to the claims and defenses in this case. That is exactly why PIP has promised to produce documents that fit within the scope of the allegations in the FAC.

[6] PIP addresses each of the at-issue requests in more detail below.

To be sure, PIP has agreed to produce relevant, responsive documents subject to the Environmental Claims in response to this Request. Thus, applying PIP's production framework here, if there were documents, as Moldex suggests, evidencing "what PIP investigated and learned about the product's actual composition and testing history when it acquired the product line," to the extent those documents implicated any of the BioSoft line's at-issue environmental features, those would be produced here.

None of Moldex's remaining arguments fare any better. ***First***, that this is a false advertising case does not, as Moldex argues, alter the analysis. Though Moldex suggests that "in false advertising cases like this one, the scope of relevant discovery is not confined to the specific statements identified in the complaint," its cited authority does not support that proposition. In *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1104-05 (C.D. Cal. 2023), for example, the court declined to limit plaintiff's motion for summary judgment to the specific statements identified in the complaint where: (1) the complaint itself noted that it was only "providing exemplars,"; (2) the at-issue evidence had been "in fact, produced by Defendants in discovery." *Id.* at 1104. That Defendants in *Diamond Resorts* ***chose*** to produce documents regarding statements beyond the allegations in the complaint has no bearing on whether PIP should be ***required*** to produce such documents.

***Second***, Moldex is not entitled to discovery unrelated to the allegations in the FAC just because a court considers the "net impression" of a challenged advertisement in a false advertising case. *See Stout*, 743 F.3d at 685. That means the court will examine the challenged statement in its context (such as the entire label) to determine whether it is deceptive; it does not give Moldex carte blanch to conduct a "fishing expedition" for previously unidentified statements in the hopes of finding something new. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing

expeditions") (internal quotations omitted); *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("We cannot condone the use of discovery to engage in fishing expeditions where, like here, it is obvious that [plaintiff] has no basis other than gross speculation to claim that [defendant] is misrepresenting the data provided by its testing protocol.") (internal quotations omitted); *Ahmed v. Mayorkas*, No. CV 23-4807 PA (ASX), 2024 WL 5317160, at *3 (C.D. Cal. May 1, 2024) (denying motion to compel where "Plaintiffs' proposed discovery is nothing more than a fishing expedition that has little to do with Plaintiffs' claims and instead appears to have more to do with Plaintiffs' counsel's repeated and unsuccessful efforts to obtain such information whenever she asserts similar claims").

***Finally***, Moldex's position is contradicted both by its own discovery responses as well as the parties' process for exchanging search terms. In response to PIP's Requests for Production, Moldex routinely limited its promise to produce documents to only those documents "expressly concerning PIP's BioSoft earplug products at issue in this lawsuit[.]" Ozurovich Decl., Ex. 4, Moldex R&Os at No. 3. Moldex cannot, on the one hand, argue that PIP's promise to produce documents ***relating*** to the FAC's allegations run afoul of the Federal Rules while, on the other hand, simultaneously cabining its own responses to only documents that "***expressly concern***" PIP's at-issue product line.

Moreover, since the parties' first responses to each other's pending discovery requests, they have developed a protocol for the exchange of search terms and custodians that obviate the need for an order here. In its January 9 letter, PIP proposed that the parties agree to a mutual process to exchange custodians and search terms. Ozurovich Decl., Ex. 6, Jan. 9, 2026 Letter from A. Ozurovich. Moldex initially rebuffed that suggestion, claiming that "it does not view this as a symmetrical case that warrants agreed-upon search terms and custodians[.]" Ozurovich Decl., Ex. 7, Jan. 27, 2026 Email from C. Fein. Moldex eventually agreed and identified the search terms it believed would capture documents responsive to its requests; PIP did the

same. PIP has engaged in this process in good faith and, while the parties continue to negotiate those terms, the initial set of proposed search terms reflect significantly broader parameters than the "verbatim" statements Moldex now contends. *See e.g.*, Exs. 8 and 9.

But rather than engage in the agreed-upon process to negotiate the parameters of the parties' search terms and continue good faith negotiations, Moldex brings these Requests to the Court based on a premise that is at odds with PIP's promised production.

**Proposed Solution**: The parties should continue their good faith negotiations of relevant search terms related to the at-issue Environmental Claims and, to the extent PIP has committed in writing to doing so, the Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### B. Request For Production No. 1

#### 1. Moldex's Request and PIP's Response

*Moldex's Request for Production No. 1*: All documents relating to the development, design, formulation, or composition of BioSoft Earplugs, including but not limited to formulation specifications, ingredient lists, material sourcing documents, manufacturing process documents, quality control and release documents, and any testing results.

*PIP's Response To No. 1*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further,[7] the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

---

[7] PIP's original response objects that "the request for '[a]ll' documents is overbroad and unduly burdensome." PIP abandoned this objection in its February 6, 2026 letter, confirming it "is not withholding documents within its possession,

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Supplemental Response to No. 1 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.[8]

---

custody, or control based on this objection." Allred Decl., Ex. 3 at 2. The same abandonment applies to Request Nos. 2-30. To the extent PIP attempts to resurrect this objection, boilerplate burden objections unaccompanied by any specific showing are legally insufficient. *See ML Prods., Inc. v. Aster Graphics, Inc.*, 2025 WL 2995106, at *5 (C.D. Cal. Oct. 8, 2025) ("Objections that terms are 'vague,' 'ambiguous,' or 'not proportional' must be accompanied by specific explanation; otherwise, such objections are legally deficient."); *Pangborn*, 2018 WL 6265055, at *2 ("The party opposing discovery has the burden of . . . clarifying, explaining, and supporting its objections.").

[8] The parties have not "agreed" on custodians and search terms as the limits of discovery in this matter. PIP and Moldex agreed to exchange proposed custodians and search terms solely to begin moving discovery forward. Moldex expressly reserved the right to seek further discovery in the event that the identified custodians and search terms are insufficient. For example, PIP unilaterally insisted on limiting its production to three custodians. Moldex objected and disputes that three custodians will be sufficient for discovery from PIP but agreed to consider what PIP products in the first instance and then follow up. However, PIP's failure to produce anything meaningful to date has rendered such an analysis impossible. Separately, Moldex proposed that the parties substantially complete document production by March 27, 2026, with a final deadline of May 1, 2026. PIP has not agreed to Moldex's proposed deadlines and has instead proposed a single final production deadline of May 14, 2026, leaving less than eleven weeks before the July 27, 2026 fact discovery cutoff to review all documents, conduct depositions and complete all remaining discovery.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 1 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 1 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**[9]

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

---

[9] To be clear, PIP's latest proposal is as follows: "PIP will produce documents, on a rolling basis, between now and May 7, with the expectation, as previously stated, that we would make routine, rolling productions up to that date. We expect Moldex to do the same." Ozurvich Decl., Ex. 5, Feb. 19, 2026 Email from A. Ozurovich. To date, the parties have produced nearly the same volume of information, with PIP being the only party to have produced *any* financial information.

**C. Request For Production No. 2**

**1. Moldex's Request and PIP's Response**

*Moldex's Request For Production No. 2*: All documents relating to any changes, modifications, or variations in the formulation or composition of BioSoft Earplugs since the inception of the product line.

*PIP'S Response To No. 2*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Supplemental Response To No. 2 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 2 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 2 as written, without

limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**D. Request For Production No. 3**

**1. Moldex's Request and PIP's Response**

*Moldex's Request For Production No. 3*: All documents relating to Your acquisition of the BioSoft Earplugs product line from Final Fit Safety or any predecessor entity, including but not limited to:

- Purchase agreements, asset purchase agreements, or acquisition contracts
- Due diligence materials, including financial records, product specifications, and testing data received or reviewed in connection with the acquisition
- Communications between You and Final Fit Safety
- Integration plans and transition documents
- All testing data or test reports provided by Final Fit Safety or NanoSystems, Inc. to You before, during, or after the acquisition
- Post-acquisition verification testing or quality control testing You conducted

*PIP's Response To No. 3*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or

information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Supplemental Response To No. 3 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 3 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 3 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

In its response to General Objection No. 3, Moldex suggests that PIP's Response to Request No. 3 attempts to exclude relevant information such as "whether

BioSoft's bio-based content matched PIP's marketing claims" and "documents reflecting what PIP investigated and learned about the product's actual composition and testing history when it acquired the product line." But that argument is belied by the fact that PIP has ***already*** produced multiple documents that speak directly to those topics. *See* Ozurovich Decl., Ex. 10, PIPBioSoft_000003-6 at -4 ([redacted]); Ozurovich Decl., Ex. 11, PIPBioSoft_000007-10 at -8 (July 9, 2024 test reporting "85% Biobased Carbon Content" on the product's stem); Ozurovich Decl., Ex. 12, PIPBioSoft_000011-14 at -13 (July 10, 2024 test reporting "89% Biobased Carbon Content"). And should there be any other relevant documents, PIP has committed to producing such "relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### E. Request for Production No. 4

#### 1. Moldex's Request and PIP's Response

*Moldex's Request for Production No. 4*: All documents relating to Your relationship with NanoSystems, Inc., including but not limited to the Exclusive Supply and License Agreement referenced in Your July 7, 2025 letter, any amendments or modifications to that agreement, and all communications with NanoSystems, Inc. regarding BioSoft Earplugs.

*PIP's Response to No. 4*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP's Supplemental Response to No. 4 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 4 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 4 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are

located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**F. Request for Production No. 5**

**1. Moldex's Request and PIP's Response**

*Moldex's Request for Production No. 5*: All testing reports, studies, analyses, or other documents relating to bio-based content testing of BioSoft Earplugs, including but not limited to all Beta Analytic reports and any testing conducted pursuant to ASTM D6866 or any other testing methodology.

*PIP's Response to No. 5*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Supplemental Response to No. 5*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

#### 2. Moldex's Contentions and Proposed Resolution

The sole dispute as to Request No. 5 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 5 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

#### 3. PIP's Contentions and Proposed Resolution

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### G. Request for Production No. 6

#### 1. Moldex's Request and PIP's Response

*Moldex's Request for Production No. 6*: All documents relating to the samples of BioSoft Earplugs submitted for bio-based content testing, including photographs, sample identification codes, chain of custody documentation, and communications with testing laboratories regarding sample submission.

*PIP's Response to No. 6*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Supplemental RESPONSE TO NO. 6 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 6 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 6 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are

located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### H. Request for Production No. 7

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 7*: All documents relating to decomposition, biodegradation, or compostability testing of BioSoft Earplugs, including but not limited to testing conducted under EN 13432, ASTM D6400, or any other testing standard or methodology.

*PIP's response to No. 7*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP's Supplemental Response To No. 7 (Feb. 6, 2026)*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since

agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 7 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 7 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**I. Request for Production No. 8**

**1. Moldex's Request and PIP's Response**

*Moldex's Request For Production No. 8*: All documents relating to carbon emissions, carbon footprint, or environmental impact analyses or calculations for BioSoft Earplugs.

*PIP'S Response to No. 8*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP's Feb. 6 Response to No. 8*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 8 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 8 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search

parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### J. Request for Production No. 9

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 9*: All documents relating to ecotoxicity, earthworm toxicity, plant toxicity, or other environmental toxicity testing of BioSoft Earplugs.

*PIP's Response To No. 9*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP's Feb. 6 Response To No. 9*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 9 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 9 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**K. Request for Production No. 10**

**1. Moldex's Request and PIP's Response**

*Moldex's Request For Production No. 10*: All documents relating to any certifications, applications for certification, or correspondence with certification bodies (including USDA BioPreferred Program, BPI, or any other entity) regarding BioSoft Earplugs.

*PIP's Response To No. 10*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects on the grounds that the terms "any other entity" and "relating to" are vague, ambiguous, and overbroad. PIP also objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP's Feb. 6 Response to No. 10*: As written, the Request seeks documents about certifications regardless of whether they relate to the Environmental Claims, meaning they are not relevant to any party's claim or defense and impermissible under Federal Rule of Civil Procedure 26(b)(1). PIP remains willing to meet and confer regarding a narrower formulation of the Request.

**2. Moldex's Contentions and Proposed Resolution**

Request No. 10 presents two independent disputes. First, like virtually all of Moldex's requests, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules.

Second, and independently, PIP has refused to commit to any production on this request whatsoever, conditioning any search on Moldex first narrowing the request to specific certification bodies. PIP's condition improperly turns discovery into a guessing game. Request No. 10 specifically identifies the USDA BioPreferred Program and BPI as examples that Moldex is aware of, and includes "any other entity" doing environmental certifications precisely because PIP, not Moldex, is the party with knowledge of which certification bodies it has contacted related to the BioSoft product line. Requiring Moldex to guess which certification bodies PIP has contacted

regarding the BioSoft product line is the very information the request is designed to uncover. PIP cannot condition its compliance on Moldex guessing facts that only PIP possesses. *Chapman*, 2002 WL 32854376, at *3 (holding that a respondent "may not unilaterally reshape or rephrase the discovery request").

These documents are directly relevant and critical to this case. PIP's communications with certification bodies, including failed applications, declined certifications, and correspondence questioning whether BioSoft meets applicable environmental standards, bear directly on PIP's knowledge that its environmental marketing claims were false or unsubstantiated. For example, PIP's July 7, 2025 letter attached to Moldex's complaint acknowledged that BioSoft failed to meet EN 13432 certification thresholds, but it has not been produced in the litigation. Failed certification documents like that and communications relating to them are particularly probative of the extent of PIP's knowledge of falsity and decision to advertise its products in a manner that suggests compliance with such standards.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 10 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on Moldex identifying specific certification bodies in advance.

**3. PIP's Contentions and Proposed Resolution**

As a threshold matter, Moldex misconstrues PIP's marketing. For the avoidance of doubt, PIP's marketing states: "BioSoft ear plugs will decompose 76% in 180 days.*" with the attendant qualifier reading: "*When tested in accordance with EN 13432 – in an aerobic environment (air/oxygen present)[.]"[10] PIP has also

[10]https://us.pipglobal.com/archive/literature/PIP-USA-BioSoft-Ear-Plug-Brochure-0525-Final.pdf?appgw_azwaf_jsc=hNcwvQ9208nmTFNVnDI_N9QPNvuEncIt2BU0zfz

produced to Moldex the testing substantiating this very claim. Ozurovich Decl., Ex. 13, PIPBioSoft_000066-80.

Yet Moldex contorts the facts in an effort to obtain broad-sweeping discovery into any and every certification that PIP has ever sought or obtained for the BioSoft product line, irrespective of whether those purported certifications relate to the at-issue statements in the FAC. Having failed to identify the certifying bodies to which the request related, PIP explained that "as written, the Request seeks documents about certifications regardless of whether they relate to the Environmental Claims" or even any environmental attribute of the product. Allred Decl. Ex. 3, C. Castiglia Feb. 6, 2026 Ltr. at 3. In other words, without that limitation, Moldex's Request is nothing but a "fishing expedition," seeking to obtain details about issues that have no bearing on the claims and defenses in this case. *See Rivera*, 364 F.3d at 1072.

Moreover, PIP has also not sought to "require[e] Moldex to guess which certification bodies PIP has contacted regarding the BioSoft product line." That flips Moldex's burden on its head. Moldex must establish why documents exchanged with any certifying body—whether related to the at-issue Environmental Statements or not—bears on the claims and defenses in the FAC. To date, it has not done so.

**<u>PIP's Proposed Solution</u>**: The parties should meet and confer regarding the certifying bodies to which Moldex's claim relates.

### L. Request for Production No. 11

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 11*: All documents relating to any comparison testing between samples submitted for testing and commercially available

---

XkYs04QMZmp8-R6DndzZvFSlzNh-QILRgT7AOgE_n2W91pHzYyf0SO23lueGSP9LyAjcT0sqeQ84e-gPKG2oyGAlswwkyGzhP0LSLK2dMs4tJtv9YEunRLo-GN4LB6zX3fHUvHdDHysgz8RhcGAaKoevFeHL1HRjF9i47Q-9WzSobnGjpG0CQipuF2OmQ3c8qEKQ83z7ME9-9u3ecXrZP-lRLm_eT2pA0A1aIkZWdU4pIF1IodtKknnx3sIInfaOMUf9nQeKAmfURB3h35KdjIy51kEC9ogs6mZvViVvuIjk1iA (last accessed Mar. 23, 2026).

BioSoft Earplugs, including any analysis of whether tested samples differ from commercial products.

*PIP's Response to No. 11*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP's Feb. 6 Response to No. 11*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 11 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 11 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

### 3. PIP's Contentions and Proposed Resolution

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**<u>PIP's Proposed Solution</u>**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

## M. Request for Production No. 12

### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 12*: All testing reports, studies, analyses, or other documents and communications relating to testing You have conducted or commissioned on BioSoft Earplugs.

*PIP's Response to No. 12*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Feb. 6 Response to No. 12*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental

Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 12 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 12 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### N. Request for Production No. 13

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 13*: All marketing materials, advertisements, promotional materials, packaging, product inserts, brochures, catalogs, and website content relating to BioSoft Earplugs since the inception of the product line to present.

*PIP's Response to No. 13*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Requests seeks matters of public record or documents or information that is already in the possession of, or otherwise easily accessible and available to, Moldex and/or its attorneys.

*PIP'S Feb. 6 Response to No. 13*: As PIP has stated, the Request seeks documents without regard to whether they relate to the Environmental Claims. To the extent the Request encompasses documents relating to the Environmental Claims, PIP further maintains that the Request seeks documents and information already in Moldex's possession or otherwise readily accessible to Moldex via the public record. Indeed, Moldex's first production included numerous pages purportedly taken from PIP's website that would be responsive to this Request.

#### 2. Moldex's Contentions and Proposed Resolution

Request No. 13 presents two independent disputes. First, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, that limitation has no basis in the Federal Rules.

Second, PIP independently objects that Request No. 13 seeks matters of public record or documents already in Moldex's possession or easily accessible to it. That objection fails. "Courts have repeatedly rejected the argument that public availability excuses a responding party's failure to produce documents within its own control." *ML Prods., Inc. v. Ninestar Tech. Co.*, 2025 WL 3755675, at *12 (C.D. Cal. Dec. 4,

2025) ("Rule 34 does not excuse [a party] from providing documents in its possession or control, solely because the information is also publicly available." (citation omitted)).

Moreover, only PIP knows what materials it created, in what versions, when, and to whom they were distributed. And more importantly, RFP 13 encompasses materials that are not public at all: internal drafts, version histories, distributor-specific presentations, and internal communications about marketing content, for example. PIP must produce such documents and communications that it used and created in the past, not just the materials PIP choses to current publish.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 13 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without withholding documents on the basis that they are purportedly in Moldex's possession or accessible via the public record.

**3. PIP's Contentions and Proposed Resolution**

Though Moldex suggests that PIP should be required to produce PIP's public-facing marketing materials, the reality is that Moldex has access to—and has itself already produced—the public materials that it seeks: of the 272 pages of documents that it has produced to date, 81 include PIP's public-facing materials. Moreover, inherent to Moldex's false advertising claim is the fact that the statements must have been, in fact, ***advertised***. *See e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (a claim for false advertising under the Lanham Act requires, in part: "[a] false statement of fact by the defendant in a commercial advertisement"; "the statement actually deceived or has the tendency to deceive a substantial segment of its audience"; and "the defendant caused its false statement to enter interstate commerce"). Therefore, the "[i]nternal drafts, version histories, distributor-specific presentations, and internal communications" that Moldex seeks

are not relevant—they do not say anything about PIP's public advertising, nor any statement that supposedly deceived consumers.

To the extent, however, that the Court overrules PIP's objection, the Court should limit the scope of any purported production to the at-issue Environmental Claims.

**PIP's Proposed Solution**: The Court should deny Plaintiff's Motion to Compel.

### O. Request for Production 14

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 14*: All documents relating to the development, review, approval, or modification of bio-based, decomposition, biodegrability, compostability, sustanitability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs.

*PIP's Response to No. 14*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S Feb. 6 Response to No. 14*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

### 2. Moldex's Contentions and Proposed Resolution

The sole dispute as to Request No. 14 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 14 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

### 3. PIP's Contentions and Proposed Resolution

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

In Section III.A.2, Moldex makes the additional argument related to Request No. 14 that because it has "no alternative means of obtaining these documents, [] PIP's sole access to it weighs strongly in favor of production." *See supra* Section III.A.2. But this argument misses the point. To the extent that there are documents relating to the at-issue Environmental Claims and that speak to "what environmental claims to make, how to substantiate them, and whether to revise them," those are necessarily captured by PIP's proposed framework. In other words, should those documents exist and relate to the at-issue claims in the FAC, any such non-privileged documents found after a reasonable search would be produced, consistent with PIP's written response to the Request.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### P. Request for Production No. 15

#### 1. Moldex's Request and PIP's Response

*Moldex's Request For Production No. 15*: All documents concerning the accuracy, substantiation, or potential revision of bio-based, decomposition, biodegrability, compostability, sustainability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs.

*PIP's Response to No. 15*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

*PIP'S FEB. 6 RESPONSE TO NO. 15*: PIP committed to producing relevant, non-privileged documents responsive to these Requests and relating to the Environmental Claims that are located after a reasonable search in accordance with agreed-upon custodian and search parameters. Insofar as Moldex requested clarity on the parameters of PIP's intended searches, the parties have since agreed to exchange proposed custodians and terms, which PIP anticipates will resolve any ambiguity.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 15 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 15 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**Q. Request for Production No. 16**

**1. Moldex's Request and PIP's Response**

*Moldex's Request For Production No. 16*: All documents relating to compliance with the FTC Green Guides, California Public Resources Code § 42357 et seq., or any other regulatory requirements for BioSoft Earplug marketing claims.

*PIP'S RESPONSE TO NO. 16*: PIP objects to this Request as cumulative of Requests Nos. 5, 6, 7, 8, 9, 10, 12, 14, and 15. In addition, PIP objects as the request

for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

*PIP'S FEB. 6 RESPONSE TO NO. 16*: PIP confirms that it is not withholding any documents responsive to these Requests based on its objection to the Requests being cumulative of Requests 5, 6, 7, 8, 9, 10, 12, 14, or 15. PIP also confirms that it is not withholding any documents responsive to these Requests based on its objection to the term "all." PIP will produce relevant, non-privileged documents responsive to these Requests that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 16 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 16 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery

under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution:** The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**R. Request for Production No. 17**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 17*: All documents relating to Your July 7, 2025 letter to Moldex's counsel acknowledging that certain BioSoft Earplug claims do not meet environmental standards and committing to update marketing materials.

*PIP'S RESPONSE TO NO. 17*: PIP objects to this Request as cumulative of Requests Nos. 5, 6, 7, 8, 9, 10, 12, 14, and 15. In addition, PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent the Request calls for the disclosure of documents or information protected by attorney-client privilege or the work-product doctrine.

*PIP'S FEB. 6 RESPONSE TO NO. 17*: PIP confirms that it is not withholding any documents responsive to these Requests based on its objection to the Requests being cumulative of Requests 5, 6, 7, 8, 9, 10, 12, 14, or 15. PIP also confirms that it is not withholding any documents responsive to these Requests based on its objection to the term "all." PIP will produce relevant, non-privileged documents responsive to these Requests that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 17 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above,

PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 17 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**S. Request for Production 18**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 18*: All documents relating to financials for BioSoft Earplugs product line since the inception of the product line to present, including but not revenue, units sold, profit and losses, costs, return on acquisition investment, convoyed and pull-through sales.

*PIP'S RESPONSE TO NO. 18*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the extent that the Request for "financials" "including but not revenue, units sold,

profit and losses, costs, return on acquisition investment, conveyed and pull-through sales" is vague and ambiguous. PIP objects to the extent the Request calls for the production of documents or information before November 13, 2023, *i.e.*, the date on which PIP acquired Final Fit Safety and the predecessor line of BioSoft Earplugs, as overbroad and unduly burdensome.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 18*: PIP has previously set forth its position that the production of financial discovery must be reciprocal and proportionate in nature. Based on counsel's email dated February 2, 2026, PIP understands that Moldex has now agreed to "produce non-privileged financial documents responsive to PIP's discovery requests." As we have said, PIP is likewise amenable to producing relevant, non-privileged documents responsive to this Request located after a reasonable search in accordance with the agreed-upon custodian and search parameters. But we believe it would be helpful to understand what types of financial documents Moldex intends to produce so the parties can discuss a mutual scope of production that is reciprocal and proportionate.

**2. Moldex's Contentions and Proposed Resolution**

PIP does not dispute that BioSoft financial documents are relevant—it expressly states it is "amenable" to producing them. The sole dispute is PIP's conditioning of production on Moldex's financial production and its demand that the parties agree on a "mutual scope" that is "reciprocal and proportionate." Allred Decl., Ex. 3 at 3.

That condition is improper. PIP cannot defer or condition its production of relevant and responsive documents on Moldex's production. *Spatola v. Desrouleaux*, 2024 WL 4406950, at *1 (C.D. Cal. Aug. 12, 2024) (Eick, M.J.) ("A party may not … condition its compliance with discovery obligations on receiving discovery from

its opponent."); *Russell v. Kronos Inc.*, 2019 WL 5485891, at *2 (N.D. Cal. Oct. 25, 2019) (similar); *Spurbeck v. Wyndham Destinations, Inc.*, 2021 WL 1080738, at *2 (D. Nev. Mar. 18, 2021) ("Discovery is not designed to be a 'tit-for-tat' system. Each party has an independent responsibility to the Court and to the opposing party to provide discovery in compliance with the governing rules."); *Prime Focus Creative Servs. Canada, Inc. v. Legend3D, Inc.*, 2016 WL 6916816, at *3 (C.D. Cal. Apr. 11, 2016) ("a party's obligation to respond to discovery is not dependent on the other party's first or simultaneously fulfilling its discovery obligations"); *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004) (ordering production where defendant conditioned its response on plaintiff's compliance with its own discovery obligations).

Request No. 18 seeks financials associated with the sale of BioSoft products (e.g., gross revenue, costs, profit and loss records, market data, etc.)—all of which bear directly on establishing both the competitive injury false advertising caused and Moldex's damages. PIP cannot hold hostage such plainly relevant discovery until it has reviewed and assessed the scope of Moldex's production.

Among other things, Moldex seeks disgorgement of profits pursuant to 15 U.S.C. 1117(a). Disgorgement requires the offending party's financials to assess the "financial benefit . . . gained from the false advertising activity." *Delta T LLC v. MacroAir Techs., Inc.*, 2024 WL 4172564, at *5 (C.D. Cal. July 18, 2024) (awarding disgorged profits); *see also Multiple Energy Techs., LLC v. Casden*, 2025 WL 579641, at *5 (C.D. Cal. Feb. 21, 2025) (disgorgement based on "the defendant's gross sales from the infringing activity"); *Guardant Health, Inc. v. Natera, Inc.*, 2025 WL 2106522 (N.D. Cal. July 28, 2025) (awarding disgorged profits in false advertising case). Moldex is not required to make its own financial showing to pursue disgorgement—the amount is measured by the offending sales, not Moldex's losses.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to promptly produce all non-privileged financial documents responsive to Request No.

18 as written, without conditioning production on the scope or timing of Moldex's financial production.

### 3. PIP's Contentions and Proposed Resolution

Here again, Moldex misconstrues PIP's position. In fact, in a letter dated February 19, 2026, counsel for PIP attempted to clarify its position on this Request and asked that "to the extent Moldex seeks relief on this issue," it "characterize [PIP's] position accurately so this Court is not under a misrepresentation about what we have said." Ozurovich Decl., Ex. 5, Feb. 19, 2026 Email from A. Ozurovich. Moldex has not done so and that same clarification bears repeating:

> [Moldex has] not accurately articulated our position, which we have now conveyed many times in writing and on calls. PIP continues to be amenable to producing relevant, non-privileged documents responsive to this Request located after a reasonable search in accordance with the agreed-upon custodian and search parameters. But as written, the requests are overbroad – to at least try to begin to solve for that, what we have discussed is both sides producing a proportional set of documents in satisfaction of the discovery requests. Moldex's financial documents are just as relevant as PIP's financial documents. Discovery is a two-way street and thus it makes sense for both sides to produce a similar set of documents.

*Id.*

PIP's position from the outset has been that it is committed to producing non-privileged, relevant financial information. *See, e.g.*, Ozurovich Decl., Ex. 6, Jan 9, 2026 Ltr. from A. Ozurovich at 6. PIP has never "defer[red] or condition[ed]" its production of responsive financial documents on "Moldex's financial production." In fact, far from the "tit for tat" that Moldex describes, PIP is the ***only*** party that has produced financial documents to date. To be sure, Moldex makes much of the fact that PIP has purportedly not produced information relevant to Moldex's claim for disgorgement of profits. Yet PIP has in fact produced this very information. It produced two spreadsheets showing: (a) PIP's monthly revenues from the sale of the product through the filing of the Complaint for each of the at-issue SKUs; and (b)

PIP's monthly profits over that same period, reflected as the Company's gross profits upon subtracting the costs of goods sold. *See e.g.* Exs. 14, 15. Moldex has produced no such comparable information—let alone *any* information regarding their financials at all, despite pending requests for such information.

The reason for PIP's proposed approach for an orderly and proportionate exchange of financial discovery is two-fold. First, as written, Moldex's Request is overbroad and goes well beyond that which is relevant and necessary for purposes of its claims. In fact, Moldex's main argument in support of obtaining PIP's financial data is that it, for purposes of its disgorgement claim, it "requires the offending party's financials" to assess the profits it has obtained. PIP has already provided that. Moldex knows exactly the amount of profits that PIP has made off of the BioSoft product line from January 2024 through September 2025—*i.e.*, the same month that Moldex filed its Complaint. Ozurovich Decl., Ex. 14. PIP has also provided its total revenues from the BioSoft product line over the same period. Ozurovich Decl., Ex. 15. Thus, any financial discovery beyond that is an irrelevant fishing expedition that has no bearing on Moldex's pending claims. *Rivera*, 364 F.3d at 1072.

Second, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Nei*, 326 F.R.D. at 656 (internal quotations omitted). In proposing a mutual framework, PIP seeks only to ensure that the parties—both participants in the market for personal protective equipment—produce relatively symmetrical financial information. That is not only fair and reasonable in the context of this case, it is what the Federal Rules require. Fed. R. Civ. P. 26(b)(1) (information is discoverable if it is "relevant to any party's claim ***or defense*** and ***proportional*** to the needs of the case") (emphasis added).

Moldex has repeatedly sought to flout this tenet of the Federal Rules, arguing that, in its view, discovery in this case need not be symmetrical. But this is not a case of "information asymmetry" where "one party—often an individual plaintiff—may

have very little discoverable information," justifying that the "burden of responding to discovery lies heavier" on PIP. Fed. R. Civ. P. 26(b) Advisory Committee's Notes to 2000 and 2015 Amendment. But Moldex's financial information is directly relevant to PIP's defense in this case, including on the issues of standing, causation, and damages.

As to standing, for example, Moldex must show both that: (a) but for PIP's false or deceptive marketing, a customer would have purchased its products; and (b) because of the allegedly false advertising, the customer bought PIP's product instead. *See, e.g., TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011); *Tortilla Factory, LLC v. Rowdy Mermaid Kombucha LLC*, No. 2:18-CV-2984, 2018 WL 9802099, at * 2 (C.D. Cal. Sept. 11, 2018). Thus, if Moldex has not lost any sales, or has lost such sales due to other market conditions, PIP is entitled to that information as part of its defense in this action.

Such information is equally relevant to assessing causation and attendant damages, if any, that Moldex purportedly suffered as a result of PIP's allegedly false statement. "To prevail on a false advertising claim under the Lanham Act, a plaintiff must prove proximate cause, *i.e.*, injury 'flowing directly from the deception wrought by the defendant's advertising.'" *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1144 (S.D. Cal. 2020) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)); *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) ("The UCL and FAL provide a private right of action only if Plaintiffs have 'suffered injury in fact and [have] lost money or property as a result of the unfair competition.'") (quoting Cal. Bus. & Prof. Code § 17204). PIP should be permitted then to review Moldex's financials in order to assess whether it suffered any injury, let alone whether the purported injury was proximately caused by PIP's marketing.

Given the corresponding need for financial discovery across both parties, and the overbreadth of Moldex's pending request for financial discovery, PIP proposed

that the parties agree to a framework that ensures equal access to equal information. To date, Moldex has rebuffed that request. And the only financial information that *has* been produced to date has been produced by PIP.

Finally, and as forth in section III.A.3, only financial information related to Moldex's allegations in the FAC is relevant.

**PIP's Proposed Solution:** If Moldex cannot agree to a mutual scope of financial discovery without the Court's intervention, the Court should order a reciprocal process for the production of financial discovery that is relevant and proportional to the needs of the case.[11]

### T. Request for Production No. 19

#### 1. Moldex's Request and PIP's Response

*MOLDEX'S REQUEST FOR PRODUCTION NO. 19*: All documents exchanged with or communications with customers (including distributors, retailers, and end users) regarding the bio-based, decomposition, biodegrability, compostability, sustantainability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs.

*PIP'S RESPONSE TO NO. 19:* PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents sufficient to show communications with customers, if any, about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims and located after a reasonable search in accordance with agreed-upon custodians and search parameters.

[11] PIP has submitted a cross motion to compel Moldex's financial information and proposes the same solution as to the one PIP identifies herein.

*PIP'S FEB. 6 RESPONSE TO NO. 19:* As written, these Requests encompass documents unrelated to the Environmental Claims (i.e., "any other environmental claims or messaging") and unrelated to Moldex (i.e., PIP's "customers," without regard for whether Moldex alleges any relationship with the customer or whether those sales were allegedly diverted from Moldex's competing products). In the interest of compromise, however, PIP offered to produce relevant, non-privileged documents sufficient to show communications with customers about sales Moldex alleges were diverted from Moldex's competing products. PIP remains willing to meet and confer regarding a narrower formulation of the Request.

**2. Moldex's Contentions and Proposed Resolution**

Request No. 19 presents two independent disputes. First, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules.

Second, Request No. 19 seeks all customer communications regarding BioSoft's environmental claims. These documents are directly relevant to determining the extent and impact of PIP's false advertising, as they would show the full extent of PIP's false advertising, how customers understood and responded to PIP's false environmental marketing, how those claims drove purchasing decisions, the degree to which PIP's false advertising impacted the market, and specific impacts it had on Moldex as well. However, PIP stated it would produce only documents "sufficient to show communications with customers about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims." Allred Decl., Ex. 3 at 4.

PIP's limitation has no basis in the request as written. Request No. 19 is not limited to communications about diverted Moldex sales, it seeks all customer communications regarding BioSoft's environmental claims. PIP has not asserted a basis for this unilateral limitation and it is improper. And as explained above, PIP cannot redefine the scope of discovery. *Chapman*, 2002 WL 32854376, at *3

("respondent may not unilaterally reshape or rephrase the discovery request"). In any event, the full extent of sales diverted from Moldex are in PIP's possession, not Moldex's.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 19 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without limiting production to communications about sales Moldex has specifically identified as diverted from its competing products.

**3. PIP's Contentions and Proposed Resolution**

Moldex's request for "all communications" with "all customers" is plainly overbroad and lacking in particularity. *See, e.g.*, *Blake v. Godfrey*, No. CV 19-9239-DDP(E), 2023 WL 8168828, at *1 (C.D. Cal. Nov. 13, 2023) (request for "all" documents relevant to plaintiff's claim found to be overly broad and lacking in particularity); *Calleros v. Rural Metro of San Diego, Inc.*, 2018 WL 1744599, at *7 (S.D. Cal. 2018) (request for "all documents" that refer or relate to the subject matter of the action or the relief prayed for in the complaint was an overbroad "catchall request" to which plaintiffs properly objected). In the face of such broad requests, courts have permitted parties to narrow their production to only documents "sufficient to show" the information sought in the pending discovery request. *See, e.g.*, *Nakashima v. Canon Sols. Am., Inc.*, No. SACV1501441CJCKESX, 2016 WL 11745087, at *4 (C.D. Cal. Oct. 26, 2016) (limiting overly broad request for "all records" to records "sufficient to show"); As such, PIP properly objected to the Request as overly broad, and, in the interest of compromise, agreed to produce "documents sufficient to show communications with customers, if any, about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims." This targets the relevant universe of communications that concerns sales that Moldex has put at issue in the FAC. *Supra* section III.A.3.

In response, Moldex alleges that somehow all communications with all customers about the BioSoft product line are relevant. But the issue in this case is whether PIP's alleged misstatements regarding the at-issue environmental features in the BioSoft product line caused Moldex to loses sales to PIP on account of PIP's allegedly false advertising. *TrafficSchool.com, Inc*., 653 F.3d at 825 ("In a false advertising suit," a plaintiff establishes injury by showing that "some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product.") (internal quotation marks and alterations omitted). It is not for Moldex to police every statement that PIP has ever made to any customer. That Moldex seeks PIP's communications with all customers only highlights Moldex's approach to discovery is to conduct a fishing expedition into all facets of PIP's business. It should not be permitted to do so, particularly when the request seeks sensitive information about PIP's customer base. *See Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020) ("Courts have frequently held that customer-related information qualifies as a trade secret, especially if a plaintiff has spent considerable time, effort, and resources, in developing some of that information.") (internal quotations omitted) (collecting cases)

Moreover, as "the party requesting the production of documents," it must "provide sufficient information to enable" PIP "to identify responsive documents"—including the customers that Moldex alleges it lost to PIP on account of its marketing. *Rotstain v. Trustmark National Bank*, 2020 WL 6550501, at *6 (N.D. Tex. 2020) ("The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not.") (internal quotations omitted). Moldex has not done so—instead, it asks PIP to prove its claim for it: not only must PIP identify "*all*" communications with its customers, but it must also deduce which of those customers would have chosen Moldex's product but for PIP's advertising—the only customers relevant here. This is not PIP's burden, nor would

PIP be capable of identifying the relevant universe of customer communications without Moldex first identifying which customers it purports to have lost.

**<u>PIP's Proposed Solution</u>:** The Court should permit PIP to produce relevant, non-privileged documents sufficient to show communications with customers, if any, about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims and located after a reasonable search in accordance with agreed-upon custodians and search parameters.

### U. Request for Production No. 20

#### 1. Moldex's Request and PIP's Response

*MOLDEX'S REQUEST FOR PRODUCTION NO. 20*: All documents reflecting customer inquiries, requests, feedback, or complaints regarding bio-based, decomposition, biodegrability, compostability, sustainability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs.

*PIP'S RESPONSE TO NO. 20:* PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP will produce relevant, non-privileged documents sufficient to show inquiries from customers, if any, about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims and located after a reasonable search in accordance with agreed-upon custodians and search parameters.

*PIP'S FEB. 6 RESPONSE TO NO. 20:* As written, these Requests encompass documents unrelated to the Environmental Claims (i.e., "any other environmental claims or messaging") and unrelated to Moldex (i.e., PIP's "customers," without regard for whether Moldex alleges any relationship with the customer or whether those sales were allegedly diverted from Moldex's competing products). In the interest of compromise, however, PIP offered to produce relevant, non-privileged

documents sufficient to show communications with customers about sales Moldex alleges were diverted from Moldex's competing products. PIP remains willing to meet and confer regarding a narrower formulation of the Request.

**2. Moldex's Contentions and Proposed Resolution**

Request No. 20 raises the same disputes as Request No. 19. For the reasons set forth in Sections III.A and III.T above, PIP's "Environmental Claims" limitation and its unilateral restriction to inquiries about sales Moldex has specifically identified as diverted are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 20 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without limiting production to inquiries about sales Moldex has specifically identified as diverted from its competing products.

**3. PIP's Contentions and Proposed Resolution**

For reasons set forth in sections III.A.3 and III.T.3, Moldex's Request for "[a]ll documents reflecting customer inquiries, requests, feedback, or complaints" is overbroad and seeks information not relevant to Moldex's claims or defenses.

**PIP's Proposed Solution:** The Court should permit PIP to produce relevant, non-privileged documents sufficient to show communications with customers, if any, about sales Moldex alleges were diverted from Moldex's competing products as a result of PIP's Environmental Claims and located after a reasonable search in accordance with agreed-upon custodians and search parameters.

**V. Request for Production No. 21**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 21*: All documents reflecting market research, customer surveys, or competitive analysis regarding customer

demand for environmentally friendly, sustainable, or bio-based hearing protection products.

*PIP'S RESPONSE TO NO. 21*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 21*: PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims, such as "[a]ll documents relating to [PIP's] business strategies for BioSoft Earplugs."

**2. Moldex's Contentions and Proposed Resolution**

Request No. 21 presents two independent disputes. First, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules.

Second, PIP has conditioned any production on a "reciprocal process governing the scope of production" and offers only to meet and confer. For the reasons set forth in Section III.S above, a party may not condition its discovery obligations on receiving discovery from its opponent. *Spatola*, 2024 WL 4406950, at *1.

Documents reflecting market research, customer surveys, and competitive analysis regarding customer demand for environmentally friendly, sustainable, or bio-based hearing protection products are directly relevant to Moldex's claims. They bear on whether PIP's false environmental marketing was material to purchasing decisions, the competitive landscape in which PIP deployed its greenwashing scheme,

and the extent of the competitive harm to Moldex. PIP cannot hold this discovery hostage pending its review of Moldex's production.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 21 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

**3. PIP's Contentions and Proposed Resolution**

For the reasons set forth in sections III.A.3 and III.S.3, Moldex's Request for "[a]ll documents reflecting market research, customer surveys, or competitive analysis regarding customer demand for environmentally friendly, sustainable, or bio-based hearing protection products" is overbroad and seeks information not relevant to Moldex's claims or defenses.

Again, contrary to Moldex's suggestion, PIP has not "conditioned" its production on Moldex's production of documents. However, as written the Request is overbroad. As a solution, PIP has therefore proposed a compromise to narrow the scope of the request and suggested that the parties agree to a reciprocal protocol in order to ensure that the parties are producing similar information on this topic. This makes sense because Moldex's own "market research, customer surveys, or competitive analysis regarding customer demand for environmentally friendly, sustainable, or bio-based hearing protection products" is equally relevant to Moldex's claim that "the environmental impact . . . has become an increasingly important factor in purchasing decisions for hearing protection products." Allred Decl. Ex. 1, FAC ¶ 19. This is not only fair and reasonable in the context of this case, it is consistent with the requirement that discovery be proportional under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1); *Nei*, 326 F.R.D. at 656.

**PIP's Proposed Solution:** If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal

process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

**W. Request for Production No. 22**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 22*: All documents reflecting pricing for BioSoft Earplugs, including any price premium charged based on environmental, bio-based, or sustainability features.

*PIP'S RESPONSE TO NO. 22***:** PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

*PIP'S FEB. 6 RESPONSE TO NO. 22*: PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims, such as "[a]ll documents relating to [PIP's] business strategies for BioSoft Earplugs."

**2. Moldex's Contentions and Proposed Resolution**

Request No. 22 raises the same two disputes as Request Nos. 21, 23, 24, 25, and 30. For the reasons set forth in Sections III.A and III.S above, PIP's "Environmental Claims" limitation and its reciprocity condition are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 22 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

**3. PIP's Contentions and Proposed Resolution**

For the reasons set forth in sections III.A.3 and III.S.3, Moldex's Request for "[a]ll documents reflecting pricing for BioSoft Earplugs" is overbroad and seeks information not relevant to Moldex's claims or defenses.

Again, PIP has not "conditioned" its production on Moldex's. PIP has proposed a compromise to narrow the as-written, overbroad request. For the same reasons set forth in section III.S.3, pricing information related to Moldex's allegedly competitive products is directly relevant to the claims and defenses in this case. PIP has, therefore, proposed a fair and reasonable compromise that is consistent with the requirement that discovery be proportional under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1); *Nei*, 326 F.R.D. at 656.

**PIP's Proposed Solution**: If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

**X. Request for Production No. 23**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 23*: All documents relating to Your analysis of competitor products to BioSoft Earplugs in the hearing protection market, including but not limited to Moldex.

*PIP'S RESPONSE TO NO. 23:* PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 23:* PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a

reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims.

**2. Moldex's Contentions and Proposed Response**

Request No. 23 raises the same two disputes as Request Nos. 21, 22, 24, 25, and 30. For the reasons set forth in Sections III.A and III.S above, PIP's "Environmental Claims" limitation and its reciprocity condition are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 23 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

**3. PIP's Contentions and Proposed Response**

For the reasons set forth in sections III.A.3 and III.S.3, Moldex's Request for "[a]ll documents relating to [PIP's] analysis of competitor products" is overbroad and seeks information not relevant to Moldex's claims or defenses. Moreover, to the extent it seeks to shift the burden of identifying products that compete with the BioSosft product line onto PIP, it should not be permitted to do so as it is Moldex's burden to establish what products, if any, it sells that allegedly compete with the BioSoft product line. *Supra* section III.T.3.

For the same reasons set forth in sections III.S.3 and III.T.3, Moldex's assessment of allegedly competitive products is directly relevant to the claims and defenses in this case. PIP has, therefore, proposed a fair and reasonable compromise that is consistent with the requirement that discovery be proportional under the Federal Rules. See Fed. R. Civ. P. 26(b)(1); *Nei*, 326 F.R.D. at 656.

**PIP's Proposed Solution**: If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal

process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

**Y. Request for Production No. 24**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 24*: All documents reflecting market share data for hearing protection products, including disposable foam earplugs, since the inception of the BioSoft Earplug product line to present.

*PIP'S RESPONSE TO NO. 24*: PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 24:* PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims.

**2. Moldex's Contentions and Proposed Resolution**

Request No. 24 raises the same two disputes as Request Nos. 21, 22, 23, 25, and 30. For the reasons set forth in Sections III.A and III.S above, PIP's "Environmental Claims" limitation and its reciprocity condition are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 24 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

**3. PIP's Contentions and Proposed Resolution**

For the reasons set forth in sections III.A.3 and III.S.3, Moldex's Request for "[a]ll documents reflecting market share data for hearing protection products" is overbroad and seeks information not relevant to Moldex's claims or defenses.

For the same reasons set forth in section III.S.3, Moldex's information related to "market share data for hearing protection products" is equally as relevant. PIP has, therefore, proposed a fair and reasonable compromise that is consistent with the requirement that discovery be proportional under the Federal Rules. See Fed. R. Civ. P. 26(b)(1); *Nei*, 326 F.R.D. at 656.

**PIP's Proposed Solution**: If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

**Z. Request for Production No. 25**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 25*: All documents relating to Your business strategies for BioSoft Earplugs, including positioning in the market, target customers, and competitive advantages claimed or anticipated.

*PIP'S RESPONSE TO NO. 25:* PIP objects to this Request as cumulative of Request No. 21, which requests "[a]ll documents reflecting market research, customer surveys, or competitive analysis regarding customer demand for environmentally friendly, sustainable, or bio-based hearing protection products." Additionally, PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. PIP further objects to the term "business strategies" as vague and ambiguous.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 25:* PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims, such as "[a]ll documents relating to [PIP's] business strategies for BioSoft Earplugs."

**2. Moldex's Contentions and Proposed Resolution**

Request No. 25 raises the same two disputes as Request Nos. 21, 22, 23, 24, and 30. For the reasons set forth in Sections III.A and III.S above, PIP's "Environmental Claims" limitation and its reciprocity condition are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 23 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

**3. PIP's Contentions and Proposed Resolution**

This request is cumulative of Request No. 21 and subject to the same objections. Therefore, for the reasons set forth in section III.V.3, Moldex's Request for "[a]ll documents relating to [PIP's] business strategies for BioSoft Earplugs" is overbroad and seeks information not relevant to Moldex's claims or defenses.

**PIP's Proposed Solution:** If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

### AA. Request for Production No. 26

#### 1. Moldex's Request and PIP's Response

*MOLDEX'S REQUEST FOR PRODUCTION NO. 26*: All documents reflecting how environmental, bio-based, or sustainability marketing claims have influenced BioSoft Earplugs' market performance, sales success, or competitive positioning.

*PIP'S RESPONSE TO NO. 26*: PIP objects to this Request as cumulative of Request No. 21, which requests "[a]ll documents reflecting market research, customer surveys, or competitive analysis regarding customer demand for environmentally friendly, sustainable, or bio-based hearing protection products" and Request No. 18, which requests "[a]ll documents relating to financials for BioSoft Earplugs product line since the inception of the product line to present, including but not revenue, units sold, profit and losses, costs, return on acquisition investment, convoyed and pull-through sales." PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims. Additionally, PIP objects to the Request as vague and ambiguous, specifically as to the phrases "influenced" and "market performance."

*PIP'S FEB. 6 RESPONSE TO NO. 26*: PIP confirms that it is not withholding any documents responsive to this Request based on its objection that the Request is cumulative of Requests 18 and 21. PIP will produce relevant, non-privileged documents responsive to these Requests that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

#### 2. Moldex's Contentions and Proposed Resolution

The sole dispute as to Request No. 26 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict

its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 26 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**PIP's Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**BB. Request for Production No. 27**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 27*: All non-privileged documents relating to Your investigation of facts and internal review in response to Moldex's March 18, 2025 letter, including but not limited to documents reflecting the gathering of testing data, communications with NanoSystems, Inc. or Final Fit Safety to obtain factual information, review of marketing materials, and factual analysis of environmental claims.

*PIP'S RESPONSE TO NO. 27*: PIP objects to this Request as cumulative of Request Nos. 5, 6, 7, 8, 9, 10, 12, 14, and 15. PIP objects as the request for "[a]ll"

documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

*PIP'S FEB. 6 RESPONSE TO NO. 27*: PIP confirms that it is not withholding any documents responsive to these Requests based on its objection to the Requests being cumulative of Requests 5, 6, 7, 8, 9, 10, 12, 14, or 15. PIP also confirms that it is not withholding any documents responsive to these Requests based on its objection to the term "all." PIP will produce relevant, non-privileged documents responsive to these Requests that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters.

**2. Moldex's Contentions and Proposed Resolution**

The sole dispute as to Request No. 27 is PIP's application of its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules and PIP cannot unilaterally restrict its production to documents tied only to the specific "Environmental Claim" statements quoted in Amended Complaint paragraphs 35-43.

*Moldex's Proposed Resolution:* Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 27 as written, without limiting production to documents relating only to the specific "Environmental Claim" statements identified in Amended Complaint paragraphs 35-43.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. *Trabulsi*, 2018 WL 6444892, at *1; *Quaker Oats Co.*, 232 F.3d at 1292.

**<u>Proposed Solution</u>**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a

reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### CC. Request for Production No. 28

#### 1. Moldex's Request and PIP's Response

*MOLDEX'S REQUEST FOR PRODUCTION NO. 28*: All documents and communications concerning Your awareness that distributors, retailers, or other third parties have made, expanded upon, or amplified environmental claims about BioSoft Earplugs.

*PIP'S RESPONSE TO NO. 28*: PIP objects to this Request as cumulative of Request No. 15, which requests "[a]ll documents concerning the accuracy, substantiation, or potential revision of bio-based, decomposition, biodegradability, compostability, sustainability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs." PIP further objects to this Request as vague and ambiguous, specifically as to the phrases "awareness," "expanded upon," and "amplified." Additionally, PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

*PIP'S FEB. 6 RESPONSE TO NO. 28*: PIP remains willing to meet and confer regarding a narrower formulation of the Request and/or clarification of the vague and ambiguous phrases, including "expanded upon" and "amplified."

#### 2. Moldex's Contentions and Proposed Resolution

Request No. 28 presents three independent disputes. First, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules.

Second, PIP objects to Request No. 28 on the grounds that it is cumulative of RFP 15. That objection fails. RFP 15 seeks documents concerning the accuracy, substantiation, or potential revision of PIP's environmental claims — it is focused on what PIP knew about its own claims. RFP 28 seeks something different: documents

showing PIP's awareness that third-party distributors were expanding or amplifying those claims beyond what PIP itself said. That is a distinct category of evidence going to the breadth of the false advertising campaign and whether PIP took steps to correct misrepresentations it knew were spreading through its distribution network. Overlap between requests does not excuse a failure to respond to each. *Camp v. L.A. Arena Co., LLC*, 2024 WL 1634095, at *25 (C.D. Cal. Mar. 22, 2024) ("A party must respond to each request in a complete, individualized fashion, and responsive documents must be produced, irrespective of whether the documents have been produced in response to another request.").

Third, PIP's February 6 letter maintains that "expanded upon" and "amplified" are vague and ambiguous, but offers no explanation why. A boilerplate vagueness objection without any articulation of the claimed ambiguity does not justify withholding documents. *Aster Graphics*, 2025 WL 2995106, at *5 ("Objections that terms are 'vague,' 'ambiguous,' or 'not proportional' must be accompanied by specific explanation; otherwise, such objections are legally deficient.").

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 28 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without withholding documents on the basis of PIP's cumulative or vagueness objections.

**3. PIP's Contentions and Proposed Resolution**

Moldex's Request is cumulative of Request No. 15. PIP's "awareness that distributors, retailers, or other third parties have made, expanded upon, or amplified environmental claims about BioSoft Earplugs"—as is requested here—is necessarily captured by Moldex's request for "[a]ll documents concerning the accuracy, substantiation, or potential revision of bio-based, decomposition, biodegrability, compostability, sustainability, carbon emissions, or any other environmental claims or messaging for BioSoft Earplugs." PIP fails to see the distinction that Moldex

attempts to draw between what PIP "***knew*** about its" claims and PIP's "***awareness***" about what other's may have been saying about those claims.

**Proposed Solution**: The Court should sustain PIP's cumulative objection, or, should it overrule that objection, permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

**DD. Request for Production No. 29**

**1. Moldex's Request and PIP's Response**

*MOLDEX'S REQUEST FOR PRODUCTION NO. 29*: All documents and communications comparing BioSoft Earplugs to Moldex's earplugs or any other competitor's earplugs, including but not limited to competitive analyses, market positioning, product feature comparisons, pricing comparisons, or customer preference data.

*PIP'S RESPONSE TO NO. 29*: PIP objects to this Request as cumulative of Request No. 23, which requests "[a]ll documents relating to Your analysis of competitor products to BioSoft Earplugs in the hearing protection market, including but not limited to Moldex." Additionally, PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

*PIP'S FEB. 6 RESPONSE TO NO. 29*: In the interest of compromise, and based on Moldex's February 2, 2026 email agreeing not to withhold documents responsive to PIP's requests for "functionally similar" Moldex products, PIP will produce any relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with the agreed-upon custodian and search parameters.

**2. Moldex's Contentions and Proposed Resolution**

Request No. 29 presents two independent disputes. First, PIP has applied its improper "Environmental Claims" limitation. For the reasons set forth in Section III.A above, PIP's limitation has no basis in the Federal Rules.

Second, PIP objects to Request No. 29 on the grounds that it is cumulative of RFP 23. That objection fails for the same reasons set forth in Section III.BB above. RFP 23 seeks PIP's general analysis of competitor products in the hearing protection market. RFP 29 seeks something more specific: documents comparing BioSoft directly to Moldex and other competitors, including competitive analyses, product feature comparisons, pricing comparisons, and customer preference data — a distinct and more targeted category of evidence bearing directly on how PIP positioned BioSoft against Moldex in the marketplace.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 29 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without withholding documents on the basis of PIP's cumulative objection.

**3. PIP's Contentions and Proposed Resolution**

As set forth above, PIP has agreed to "produce relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters." As stated in detail in Section III.A.3, this is the proper scope of discovery under the Federal Rules. Trabulsi, 2018 WL 6444892, at *1; Quaker Oats Co., 232 F.3d at 1292.

**Proposed Solution**: The Court should permit PIP to produce relevant, non-privileged documents that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters, with a completion date of May 7, 2026.

### EE. Request for Production No. 30

#### 1. Moldex's Request and PIP's Response

*MOLDEX'S REQUEST FOR PRODUCTION NO. 30*: All documents and communications discussing, mentioning, or analyzing Moldex, its polyurethane earplug products, market position, competitive strategies, or market share.

*PIP'S RESPONSE TO NO. 30:* PIP objects as the request for "[a]ll" documents is overbroad and unduly burdensome and further, the Request seeks documents or information not relevant to Moldex or the Environmental Claims.

Subject to and without waiver of the foregoing objections and the objections to Moldex's Instructions and Definitions, PIP is willing to meet and confer on this Request.

*PIP'S FEB. 6 RESPONSE TO NO. 30*: PIP incorporates by reference its prior correspondence setting forth its position and offering to meet and confer about a reciprocal process governing the scope of production. PIP also remains willing to meet and confer regarding a narrower formulation of the Requests which, as written, seek documents not relevant to Moldex or the Environmental Claims.

#### 2. Moldex's Contentions and Proposed Response

Request No. 30 raises the same two disputes as Request Nos. 21, 22, 23, 24, and 25. For the reasons set forth in Sections III.A and III.S above, PIP's "Environmental Claims" limitation and its reciprocity condition are both improper.

*Moldex's Proposed Resolution*: Moldex requests an order compelling PIP to produce all non-privileged documents responsive to Request No. 30 as written, without limiting production to documents relating only to the specific statements identified in Amended Complaint paragraphs 35-43, and without conditioning production on the scope or timing of Moldex's production.

#### 3. PIP's Contentions and Proposed Response

For the reasons set forth in sections III.A.3 and III.S.3, Moldex's Request for "[a]ll documents and communications discussing, mentioning, or analyzing Moldex,

its polyurethane earplug products, market position, competitive strategies, or market share" is overbroad and seeks information not relevant to Moldex's claims or defenses.

PIP has not conditioned its production on Moldex's, it has proposed a fair and reasonable compromise to narrow the overbroad request, which is consistent with the requirement that discovery be proportional under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1); *Nei*, 326 F.R.D. at 656.

**PIP's Proposed Solution**: If Moldex cannot agree on mutual scope of discovery without the Court's intervention, the Court should order a reciprocal process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.

## IV. Conclusion

For the reasons set forth above, the Parties seek an Order from the Court resolving this dispute. Moldex seeks an order compelling PIP to (1) produce documents responsive to the full scope of Moldex's Requests for Production, and (2) immediately begin production to fulfill its discovery obligations to these requests.

Dated: March 24, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Joseph M. Paunovich*
Joseph M. Paunovich (Bar No. 228222)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100
joepaunovich@quinnemanuel.com

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Fax: (801) 515-7400

*Attorneys for Plaintiff Moldex-Metric, Inc.*

Dated: March 24, 2026

Respectfully submitted,

DECHERT LLP

By: /s/ *Jay Bhimani*

Jay Bhimani (SBN 267689)
jay.bhimani@dechert.com
Allison K. Ozurovich (SBN 312797)
allie.ozurovich@dechert.com
Allison M. DeJong (SBN 363033)
allison.dejong@dechert.com
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

Craig Castiglia (*pro hac vice*)
craig.castiglia@dechert.com
2929 Arch Street
Philadelphia, PA 19104-2802
Telephone: (215) 994-4000

*Attorneys for Protective Industrial Products, Inc.*