Jay Bhimani (SBN 267689)
jay.bhimani@dechert.com
Allison K. Ozurovich (SBN 312797)
allie.ozurovich@dechert.com
Allison M. DeJong (SBN 363033)
allison.dejong@dechert.com
DECHERT LLP
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

[*Additional Counsel on Signature Page*]

*Attorneys for Defendant Protective Industrial
Products, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MOLDEX-METRIC, INC.,<br><br>Plaintiff,<br>v.<br><br>PROTECTIVE INDUSTRIAL PRODUCTS, INC.,<br><br>Defendant. | Case No. 2:25-cv-08931 FMO (Ex)<br><br>**PROTECTIVE INDUSTRIAL PRODUCTS, INC.'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS**<br><br>Date: September 3, 2026<br>Time: 10:00 A.M.<br>Place: 255 E. Temple St.<br>Los Angeles, CA 90012<br>Courtroom 6D<br><br>Complaint Filed: September 18, 2025<br>FAC Filed: December 12, 2025<br>Fact Discovery Cutoff: October 20, 2026<br>Trial Date: May 11, 2027 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................................... 1

LEGAL STANDARD............................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.     PIP'S MOTIONS TO DISMISS MADE NO MISREPRESENTATIONS OF FACT. .......................................................................................................................... 2

II.    MOLDEX MISCONSTRUES PIP'S ARGUMENTS AND GIVES A ONE-SIDED SPIN ON DISCOVERY DOCUMENTS. ....................................................... 8

    A.     Moldex and PIP as "Direct Competitors" ........................................................... 9

    B.     "Diverted Sales" ................................................................................................. 13

    C.     82% Bio-Based Content "Representation" ........................................................ 15

III.   CONCLUSION............................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................... 5

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991)..................................................................................... 8

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) ..................................................................... 2

*Continental Airlines, Inc. v. Groups Systems Intern. Far East, Ltd.*,
   109 F.R.D. 594 (C.D. Cal. 1986)............................................................. 6, 7

*Eli Lilly and Company v. Willow Health Servs., Inc.*,
   No. 2:25-cv-03570-AB-MAR, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025) ............ 11

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009)......................................................................... 8

*Lexmark Int'l v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)........................................................................ 10, 11, 14

*Marcus v. Alexandria Real Estate Equities, Inc.*,
   No. 21-8088, 2022 WL 2815904 (C.D. Cal. May 3, 2022)........................... 8

*MI-94, LLC v. Chemetall US, Inc.*,
   No. 2:23-cv-00647-CDS-DJA, 2023 WL 8186618 (D. Nev. Nov. 27, 2023)................. 2

*Operating Engineers Pension Trust v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ..................................................... 2, 7, 8, 20

*Prime Healthcare Servs. v. Humana Ins. Co.*,
   No. EDCV 16-1097-VAP, 2018 WL 8131762 (C.D. Cal. Aug. 22, 2018)..................... 6

*Truesdell v. S. California Permanente Med. Grp.*,
   209 F.R.D. 169 (C.D. Cal. 2002)................................................................. 8

*United Nat. Ins. Co. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) ..................................................................... 2

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

*Vampire Family Brands, LLC v. MPL Brands, Inc.*,
   No. CV 20-9482-DMG, 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021)......................... 11

*Ward v. Jump Trading, LLC*,
   No. 25-cv-03989-PHK, 2026 WL 145846 (N.D. Cal. Jan. 20, 2026)................. 1, 11, 14

**Statutes**

Federal Rule of Civil Procedure 8(a) ................................................................................. 3

Federal Rule of Civil Procedure 9(b).......................................................................... 3, 4, 16

Federal Rule of Civil Procedure 11............................................................................*passim*

Federal Rule of Civil Procedure 12.................................................................................... 5

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

## **INTRODUCTION**

Moldex asks this Court to levy the "extraordinary" remedy of Rule 11 sanctions, which is reserved for "rare and exceptional" cases, in connection with PIP's motions to dismiss the Complaint and First Amended Complaint ("FAC"). There is no basis for sanctions here.

**First**, PIP's motions to dismiss made facial challenges to Moldex's Complaints, including as to the sufficiency of the pleadings' standing allegations. Moldex does not argue that PIP misstated or misquoted the pleadings' allegations. Nor does Moldex argue that PIP mischaracterized the law on which the motions to dismiss are based. Instead, Moldex seeks sanctions based on its own spin on documents that PIP produced in discovery. That makes no sense. In accordance with the governing standards, PIP's motions to dismiss accepted the truth of Moldex's factual allegations and explained why, even accepting those allegations, Moldex had not adequately pleaded its standing or claims. PIP did not make affirmative factual representations as to what the ultimate merits of the claim will be, and did not seek dismissal on that basis—nor could it have done so, given the applicable pleading and motion to dismiss standards. If Moldex believes that it has now discovered facts that would address PIP's motion to dismiss arguments, it could have sought to further amend its FAC. But it has not done so, and the record in no way supports the sanctions it seeks instead.

**Second**, Moldex's arguments about the alleged "misrepresentations" by PIP's counsel are misplaced. "Wise attorneys know that seeking sanctions *before* prevailing on an issue amounts to putting the cart before the horse." *Ward v. Jump Trading, LLC*, No. 25-cv-03989-PHK, 2026 WL 145846, at *15 (N.D. Cal. Jan. 20, 2026). That is what Moldex has done here. Moldex's interpretation of each of the three categories of documents that Moldex cites is belied by the documents themselves and testimony adduced in discovery to date:

- *Direct Competitor.* Moldex interprets a presentation to mean that PIP directly competed with Moldex in the sale of BioSoft earplugs but ignores contemporaneous documents—and related testimony—contradicting its spin on the document;

1

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

- ***Diverted Sales.*** Moldex points to an "opportunity list" identifying Siemens and Coca-Cola as proof that PIP converted sales with those entities, but ignores testimony from the document's author showing that Moldex's spin on the document is unfounded;

- ***Test Results***. Moldex claims that PIP withheld information relating to product testing, but ignores that PIP's motion accepted as true—as it must—***Moldex's*** alleged test results and related allegations.

Moldex chose to serve this Motion before a single deposition even took place. But the countervailing testimony and documents adduced to date underscores that Moldex's one-sided understanding of a handful of PIP documents comes nowhere close to meeting the high standard necessary for imposing Rule 11 sanctions. The Motion should be denied.

## LEGAL STANDARD

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution" and reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988). "One of the fundamental purposes of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citations omitted). "Courts within the Ninth Circuit routinely defer Rule 11 motions regarding the pleadings until the case is resolved on its merits." *MI-94, LLC v. Chemetall US, Inc.*, No. 2:23-cv-00647-CDS-DJA, 2023 WL 8186618, at *5 (D. Nev. Nov. 27, 2023) (collecting cases). Sanctions should be imposed "only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients." *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001).

## ARGUMENT

### I. PIP's Motions To Dismiss Made No Misrepresentations Of Fact.

The Court should deny the Motion because Moldex cannot show that PIP made any factual misrepresentations in either of its motions to dismiss. PIP facially attacked the

2

sufficiency of Moldex's standing allegations while also arguing that Moldex did not satisfy the pleading standards imposed by Federal Rules of Civil Procedure 8(a) and 9(b). (*See* Dkt. 22 at 5-6, Dkt. 33 at 5.) Neither rest on factual representations. Rather, a facial attack challenges the sufficiency of the allegations, requiring the court to "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." (Dkt. 33 at 5 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).) So too with PIP's challenges under Rule 8 and Rule 9(b). (*Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).) Each of PIP's arguments was a facial attack along those lines:[1]

- *Article III*: Because Moldex did not adequately allege: (a) "lost sales data" or diverted sales on account of the at-issue marketing that would have gone to Moldex; or (b) "a chain of inferences showing how [PIP's] false advertising could harm [Moldex's] business," it did not adequately allege Article III standing. (Dkt. 33 at 6-10 (quoting *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 825 (9th Cir. 2011).)

- *Lanham Act*: Because Moldex did not adequately allege that: (a) it should get the benefit of the "direct competitor" presumption as it does not market a bio-based earplug; and (b) even with a presumption, there would be "a 1:1 relationship between [Moldex's] lost sales and the sales diverted to [PIP]," Moldex did not sufficiently allege Lanham Act standing.  (*Id.* at 11-17 (quoting *Eli Lilly and Company v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2025 WL 2631620, at *6 (C.D. Cal. Aug. 29, 2025) (quoting *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014))).)

- *Unfair Competition Law ("UCL")/False Advertising Law ("FAL")*: Because Moldex did not adequately allege: (a) "its own reliance" (*id.* at 17 (quoting *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20-CV-1765-GPC (BGS), 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021)); or (b) "a sufficient causal

---

[1]    These descriptions are a summary. PIP's complete arguments are in the underlying briefing.

3

connection between the competitor defendant's fraudulent business practices and the competitor plaintiff's injury," it did not allege UCL or FAL standing. (*Id.* at 17-18 (quoting *KT. Enters. LLC v. Comp360, LLC*, 751 F. Supp. 3d 999, 1004-05 (C.D. Cal. 2023).)

- *General 12(b)(6) Challenges*: Because Moldex's remaining challenges pertained to statements that PIP did not make in its marketing, misconstrued PIP's marketing, or did not meet Rule 9(b)'s requirements, those claims did not satisfy pleading requirements. (*Id.* at 19-20.)

Each of these arguments rested on pertinent legal authority and the allegations in Moldex's pleadings. Nothing about the nature of PIP's motions was hard to parse; both recited the relevant legal standards, including that a plaintiff's well-pleaded factual allegations must be taken as true to evaluate their sufficiency.[2] Other than noting that PIP previously filed a Motion to Dismiss, the background section of PIP's pending motion to dismiss exclusively cites Moldex's FAC or the marketing that Moldex challenges as false. (*See, e.g.*, Dkt. 33 at 3-4.) The rest of the brief explains that Moldex's allegations are insufficient to state a claim under the applicable law, including on standing. (*See* Dkt. 33 at 6-20.) PIP set forth the standards to establish standing under Article III, the Lanham Act, and the UCL/FAL—each of which have differing but related requirements. PIP also cited approximately thirty cases, explaining in detail how they aligned with PIP's arguments. (*See generally* Dkt. 33.)

While PIP's motions to dismiss are clear on their face, Moldex adopts a few tactics to argue that they involved factual misrepresentations. In some instances, Moldex declares that PIP made false representations, citing generally to PIP's motions but not actually identifying or quoting any representation.[3] Elsewhere, Moldex quotes PIP's motions, but

---

[2]    *See, e.g.*, ECF No. 33 at 5 (citing *Twombly,* 550 U.S. at 570).

[3]*See, e.g.*, Mot. at 2 ("PIP represented, among other things, that its falsely advertised 82% bio-based BioSoft earplugs are not comparable to and do not compete with Moldex's earplugs (ECF No. 33 at 1-2, 11) and that PIP allegedly did not divert sales from Moldex,

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

ignores in substance the distinction between: (1) arguments about the sufficiency of a complaint's allegations, taken as true for Rule 12 purposes; and (2) factual representations about the truth of the complaint's allegations. The Motion repeatedly treats the two as interchangeable while obfuscating the difference.[4] Moldex takes a similar tack as to plausibility, claiming that PIP's *Twombly* argument—that the FAC failed to allege "enough facts to state a claim to relief that is plausible on its face"—is the same as a factual representation about the ultimate merits.[5]

If accepted, Moldex's Motion would turn the filing of a Rule 12(b)(1) or 12(b)(6) motion into sanctionable conduct if a plaintiff later finds any evidence that his or her counsel believe even arguably supports the allegations, obliterating the very concept of federal pleading standards. Moldex's arguments about "continuing obligations" under Rule 11 (Mot. at 14) are likewise misplaced. PIP's motions to dismiss are facial attacks on the adequacy of the pleadings; documents produced in discovery are beyond that scope. And even still, as described below, Moldex's one-sided spin on the documents it cites misses the mark—which is in part why motions to dismiss are cabined to the pleadings to begin with.

The vast majority of Moldex's cited cases do not even concern sanctions in relation to a motion to dismiss. And the two that do are inapposite. In *Prime Healthcare Servs. v. Humana Ins. Co.*, No. EDCV 16-1097-VAP (JEMx), 2018 WL 8131762 (C.D. Cal. Aug. 22, 2018), the court held that "Defendant violated Rule 11 by making a frivolous argument

---

including from customers Coke and Siemens named in Moldex's complaint (ECF No. 33 at 6-7).").

[4]   *See, e.g.*, Mot. at 4 ("PIP's motion . . . *made affirmative representations* to the Court about the alleged lack of competition and diverted sales, and results of testing relating to the false 82% bio-based claim. *Specifically,* PIP argued that Moldex '*pleads no facts plausibly suggesting*, for example, that a customer who prefers a bio-based earplug or cares about decomposability would—when learning the alleged truth—turn to a Moldex product without those features,' and that Moldex '*has not alleged facts plausibly suggesting* that it is a 'direct competitor' in the market for the types of 'bio-based,' sustainable earplugs at issue.") (emphasis added).

[5]   *See, e.g.*, Mot. at 16 ("PIP nevertheless told the Court in its Motion to Dismiss that Moldex's competition allegations are *implausible*. PIP's contentions required 'evidentiary support,' 'warranted on the evidence,' after a reasonable inquiry.").

5

regarding Plaintiffs' failure to exhaust their administrative remedies in its FAC MTD and SAC MTD." *Id.* at \*7. Specifically, the defendant "argued that Plaintiffs, who are contract providers, had to first comply with Defendant's internal appeal procedures, and then pursue the federal administrative review process." *Id.* But then, in depositions, the defendant's corporate representatives "testified that the federal review process is not available to contract providers." *Id.* at \*4, \*7. In other words, the defendant sought dismissal on the legal ground that plaintiff failed to complete a required procedure, while the defendant's own witnesses later testified that the same procedure was "not part of the process" and never had been. *Id.* That is not the case here. Moldex nowhere suggests that PIP misstated the relevant legal standard, and the law on which PIP relies is described at length in the underlying briefing. Although the parties have differing views on whether Moldex's allegations comport with the applicable standards, there is no claim that PIP misrepresented those standards. Nor, as described below, is there anything here that approaches the stark discrepancy between the arguments made, and the testimony adduced, in *Prime Healthcare*.

Likewise, in *Continental Airlines, Inc. v. Groups Systems Intern. Far East, Ltd.*, 109 F.R.D. 594 (C.D. Cal. 1986), the defendant filed a motion to dismiss for lack of personal jurisdiction. *Id.* at 596. In its opposition, the plaintiff argued that the defendant "was present in California through one or more 'general agents' under well-established Ninth Circuit law." *Id.* at 597. "None of the facts relevant to [the general agent issue was] mentioned in the moving papers." *Id.* The court found that certain "critical facts" should have been discovered by a reasonable inquiry, including "the existence of an affiliated California corporation whose directorate interlocked with defendant's and who also was represented by the same law firm," "a letter written by the partner of the attorney signing the Rule 11 certificate which states in part that the California corporation is the 'U.S. agent' of defendant," and other jurisdictional facts. That is far unlike the case here. As an initial matter, in assessing personal jurisdiction, the court in *Continental Airlines* went beyond assessing the pleadings to consider "plaintiff's marshalling of the facts which was determinative of the outcome of the motion." *Id.* at 596. And more generally, the

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

discrepancy between the arguments made and the underlying facts was stark—the jurisdictional arguments failed under "well-established Ninth Circuit law" if the defendant was present in California "through one or more 'general agents,'" and yet the defendant's counsel ignored an affiliated California corporation "represented by the same law firm" and a letter referring to that corporation as the "U.S. agent" of the defendant. As described below, that is unlike anything remotely resembling the record here.[6]

Moldex broadly asserts that "[c]ounsel cannot simply make or deny factual contentions in attacking a complaint's allegations as implausible where a reasonable inquiry would have revealed otherwise." (Mot. at 13-14 (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991)).) But Moldex paints with too broad a brush. Indeed, Moldex's only citation on this point, *Business Guides*, involved different facts and had nothing to do with attacking a complaint's allegation in a motion to dismiss. The plaintiff there was sanctioned after seeking a temporary restraining order based on affidavits containing false information, filing a supplemental affidavit with false information after being alerted to discrepancies by the Court, and then obfuscating the reasons for the false information at hearings. *See Bus. Guides*, 498 U.S. at 536-37.

Moldex's other cited cases likewise bear no resemblance to either the facts or posture here. In *Marcus v. Alexandria Real Estate Equities, Inc.*, No. 21-8088, 2022 WL 2815904 (C.D. Cal. May 3, 2022), the court sanctioned an attorney for filing a complaint asserting diversity jurisdiction based on the plaintiff's status as a UK citizen, even though the counsel knew that the plaintiff was also a U.S. citizen, which destroyed diversity jurisdiction. *Id.* at

---

[6] *Continental Airlines* was decided in 1986, shortly after Rule 11's overhaul in 1983. In 1988, in overruling an imposition of sanctions in another case, the Ninth Circuit observed that "the inappropriate imposition of Rule 11 sanctions in this case is not an isolated occurrence" and noted that "we have been required with some regularity to reverse district court awards of sanctions, even in cases in which the party against whom sanctions were imposed prevailed on appeal." *Operating Eng'rs Pension Tr.*, 859 F.2d at 1345 (citing law review articles). This led, in part, to the Ninth Circuit urging "restraint" in imposing Rule 11 sanctions given it is "an extraordinary remedy, one to be exercised with extreme caution." *Id.*

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

*3-4. The court further noted that the signing attorney had not conducted even basic legal research into the jurisdictional implications, despite Ninth Circuit precedent. *See id.* In *Gollomp v. Spitzer*, 568 F.3d 355 (2d Cir. 2009), the Second Circuit affirmed sanctions against a plaintiff's attorney who continued to press claims against the State of New York despite being repeatedly informed that the claims were definitively barred by the Eleventh Amendment. *Id.* at 369. The same attorney also falsely told the court that he had not been previously sanctioned. *See id.* at 369-70. In *Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 176 (C.D. Cal. 2002), the court sanctioned an attorney for adopting legal positions that were based on "inapposite and inadequate authority," as well as a "wholly unreasonable and specious interpretation" of a contract, all while presenting "absolutely no authority undermining" the controlling law. *Id.*

Nothing here resembles such conduct. And although PIP will not relitigate here the substance of its arguments, as one of those motions remains pending, PIP does note that its legal arguments are specific, well-cited, and supported by case law. Moldex has not established any misconduct by PIP or its counsel, much less conduct that warrants the "extraordinary remedy" of Rule 11 sanctions. *Operating Engineers*, 859 F.2d at 1344-45.

## II. Moldex Misconstrues PIP's Arguments And Gives A One-Sided Spin On Discovery Documents.

Moldex wades into three categories of issues that are the subject of discovery: (1) the extent to which PIP and Moldex are "direct competitors," (Mot. at 15-16); (2) whether Moldex can identify any diverted sales as a result of the at-issue marketing (*id.* at 16-18); and (3) bio-based testing on the product. (*Id.* at 18-20.) Moldex's arguments miss the mark for two reasons: **first**, Moldex misconstrues the nature and scope of what PIP argued; and **second**, Moldex gives a one-sided recitation of what has been adduced in discovery to date.

Before addressing these three categories, PIP refutes Moldex's argument that PIP only produced the documents that Moldex cites because Moldex moved to compel their production. (Mot. at 6-7.) In its First Set of Requests for Production, Moldex issued 30 Requests. (Ex. 1, Moldex's First Set of RFPs.) In response, PIP committed to producing

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

"relevant, non-privileged documents responsive to this Request that relate to the Environmental Claims and are located after a reasonable search in accordance with agreed-upon custodian and search parameters" for 18 of them—including, for example, documents related to testing in PIP's possession regarding bio-based testing on the BioSoft earplug. (Ex. 2, PIP's R&Os to Moldex's First Set of RFPs; Ex. 3, 2/6/2026 Ltr.) For the remaining 12, PIP either: (a) committed to producing relevant, non-privileged documents subject to a reciprocal exchange of information; (b) requested further meet and confers to narrow the Requests' scope; or (c) in one instance, did not agree to produce documents. (Ex. 3, 2/6/2026 Ltr.) With respect to Request No. 25—the Request Moldex identifies in its Motion—PIP requested a narrower formulation of the Request and a reciprocal process for the production of such information. (*Id.* at 3.) Moldex rejected both proffers. It instead moved to compel further responses to *every one* of its 30 Requests. (Dkt. 43.) The Court denied Moldex's motion as to half of the at-issue Requests. (Dkt. 57 at 3-5.)

With respect to Request No. 25, though Moldex sought more, the Court cabined PIP's production in the same manner that PIP suggested in its opposition to Moldex's motion. (*Compare* Dkt. 43 at 68 ("**PIP's Proposed Solution**: If Moldex cannot agree on [a] mutual scope of discovery without the Court's intervention, the Court should order a reciprocal process for the production of responsive documents that are relevant and that relate to the at-issue Environmental Claims in this case.") *with* Dkt. 57 at 4 ("granted" but "limited to documents reflecting such business strategies relating to environmental matters.").) Thus, any suggestion that PIP only produced documents because it was compelled to do so is belied by the record. Moldex's suggestion that PIP's production is deficient as to customer communications is likewise unfounded—in fact, the Court denied Moldex's motion to compel on the issue. (*See* Dkt. 140 at 2.)

### A. Moldex and PIP as "Direct Competitors"

Moldex first argues that "PIP represented to the Court that Moldex had not alleged facts 'plausibly suggesting' that it is a 'direct competitor' in the market for bio-based

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

earplugs, and that no customer who preferred an eco-friendly earplug would buy a Moldex product." (Mot. at 15.) Moldex misconstrues PIP's arguments and the factual record.

PIP's legal arguments on this point relate specifically to statutory standing under the Lanham Act. For Moldex to have standing under the Lanham Act, it must meet the two-part test set forth in *Lexmark,* 572 U.S. at 131-132. The first prong—known as the "zone of interests"—requires Moldex to "allege an injury to a commercial interest in reputation or sales." *Id*. The second prong—focused on proximate cause—requires Moldex to allege that its injury "flows directly from the deception wrought by the defendant's advertising," typically resembling "something very close to a 1:1 relationship" between the at-issue conduct and Plaintiff's alleged harm. *Id.* at 119, 133, 139.

Accepting Moldex's allegations in both Complaints as true, PIP's motions challenged Moldex's ability to meet either prong. (*See* Dkt. 22 at 11-16; Dkt. 33 at 11-17.) Whether Moldex is a "direct competitor" is relevant to the first prong of the *Lexmark* test. That is because courts "generally presume[] commercial injury" for Lanham Act purposes where a plaintiff demonstrates that the defendant is a direct competitor. (Dkt. 33 at 11 (citing *TrafficSchool.com, Inc.* 653 F.3d at 826-27).) The term "direct competitor" has a specific meaning in the context of Lanham Act case law. (*See id.*) In its motions, PIP argued that Moldex failed to allege it was a direct competitor because "Moldex makes no allegation that it has ***ever*** sold a bio-based, sustainable earplug like those in the BioSoft line." (Dkt. 22 at 13; *see also* Dkt. 33 at 12.) Nor did Moldex make a "plausible factual allegation as to why a consumer reaching for a bio-based product would, upon learning the alleged truth, reach for a product with no advertised bio-based content or decomposability characteristics." (Dkt. 22 at 13; Dkt. 33 at 13.) PIP cited numerous cases supporting its arguments on this point. *See, e.g.*, *Vampire Family Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASx), 2021 WL 4134841 at *7 (C.D. Cal. Aug. 6, 2021); *Willow Health Servs., Inc.*, 2025 WL 2631620 at *4, *6. PIP did not stake out a factual position "that no customer who preferred an eco-friendly earplug would buy a Moldex product," as Moldex now frames it. (Mot. at

10

15.) Instead, PIP's arguments were based on the sufficiency of Moldex's allegations. (*See* Dkt. 22 at 13; Dkt. 33 at 12-13.)

Factually, Moldex cites three PIP internal documents that purportedly "tell the opposite story." (Mot. at 15.) Though Moldex credits its understanding of the three documents as the source of truth as to their meaning, the documents themselves and corresponding testimony from PIP's witnesses are not in accord. The first two documents are a ████████████████████████████████████████████████████ ███████████████████████████████████. (*See* Mot. at 15-16 (citing Mot. Ex. 3, PIPBioSoft_005117, Mot. Ex. 4, PIPBioSoft_004589).) Moldex identifies ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ (Mot. at 9.) ████████████ ████████████████████████████████████████████████ (Mot. Ex. 3 at PIPBioSoft_005119-5130), ████████████████████████████████████ (*Id.* at -5131.) ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████ (*Id.* at -5131-5138.) ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ (*Id.* at -5141.) ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

Moreover, Moldex served its Rule 11 motion on PIP before a single deposition had taken place. And the testimony adduced since contradicts Moldex's spin. PIP's Director of Product Sales, Jim Wilson, for example, testified ████████████████████████ ████████████████████████████████████████████████████ (Ex. 4, Wilson Dep.

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

225:9-24; *see also id.* 269:15-16.) T█████████████████████████████████
███████████████



(Ex. 5, Wilson Ex. 17 at PIPBioSoft_004683.) ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████ (Ex. 4, Wilson Dep. 76:25-77:12.) ██████████████████████████████████████████
██████████████ (Ex. 6, PIPBioSoft_003032.) ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████ (Ex. 7, Ortman Dep. 33:19-34:6; *see also id.* 34:8-36:8.) ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████ (Ex. 8, Milot Dep. 69:18-24.)

Moldex also cites an email chain in which ██████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████ (*See* Mot. at 15-16 (citing Mot.

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

Ex. 5, PIPBioSoft 007101).)[7] The email does not speak to whether Moldex markets a comparable bio-based earplug—the core argument on this topic in PIP's motions. (Dkt. 33 at 12.) Nor does it speak to whether a consumer, upon learning the alleged truth, would have purchased a Moldex product as opposed to one of the many other disposable foam earplugs on the market. (*Id.* at 12-13.) On the contrary, it highlights ████████████████████ ████████████████████████████. (*Id.* at 16-17.) And more broadly, Moldex appears to be re-litigating an argument already advanced in its Opposition to PIP's motions to dismiss (and refuted in PIP's reply)—that competing in the foam earplug market generally is sufficient to establish direct competition here. (Dkt. 39 at 7-10.)

PIP does not raise these points to invite a ruling as to who should prevail on these issues and who should not. This is not the place for that. Instead, PIP raises these points because while Moldex treats these documents as a "smoking gun" sufficient to impose sanctions, the documents themselves—and related testimony—contradict Moldex's attorney-driven interpretation. That is, in part, why discovery documents have no role in the Court's analysis of a motion to dismiss challenging the sufficiency of a complaint's allegations. It is also why Courts have "admonishe[d] counsel" for filing sanctions motions at an early stage because it "not only burdens the Court with premature motions practice, but also gives the appearance of needless posturing." *Ward*, 2026 WL 145846, at *15.[8]

Accordingly, nothing in Moldex's Motion establishes that PIP violated Rule 11 in arguing that Moldex did not satisfy the first prong of the *Lexmark* test.

### B. "Diverted Sales"

Moldex next argues that, in PIP's motion to dismiss the FAC, "PIP argued to the Court that Moldex failed to identify diverted sales, suggested that neither Siemens nor Coca-Cola had purchased BioSoft earplugs, and argued that 'it is not the case' that 'only PIP can

---

[7]   Moldex incorrectly asserts that PIP's former Executive Chairman authored emails it cites within that chain, but those appear to be authored by his son. (Mot. Ex. 5.)

[8]   Even if these documents undercut PIP's arguments as to the first prong of the *Lexmark* test, PIP moved to dismiss on other grounds too, including Moldex's failure to satisfy the second prong of the *Lexmark* test, as well as failure to establish standing under either the UCL or FAL. (Dkt. 33 at 17.)

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

know' whether such sales occurred." (Mot. at 16.) In its motion, PIP argued that Moldex did not adequately allege Article III injury in part because Moldex: (a) does not identify a sale it lost to PIP on account of PIP's marketing or provide lost sales data, or (b) allege a chain of inferences showing how PIP's advertising harmed Moldex. (*See* Dkt. 33 at 6-10 (citing *Trafficschool.com*, 653 F.3d at 825).) As to the Coca-Cola and Siemens "opportunities" specifically, PIP challenged Moldex's allegations on "information and belief" because Moldex "has not stated any factual basis for this belief beyond mere suspicion." (*Id.* at 7 (citing *Tortilla Factory, LLC v. Rowdy Mermaid Kombucha*, No. CV 18-2984-R, 2018 WL 9802099, at \*2 (C.D. Cal. Sept. 11, 2018) (citations omitted).) PIP further challenged Moldex's allegation because Moldex did not allege that either of these customers would have purchased a Moldex product but for PIP's marketing, or that those customers bought PIP's BioSoft products on account of the marketing. (*Id.* at 7-8.) Nor was such information, PIP argued, exclusively in its control as Moldex could have alleged facts based on knowledge it gleaned from communications with its customers. (Dkt. 39 at 5.)

Moldex now claims that PIP "h[eld] documents that directly contradicted [these arguments] and established the plausibility of Moldex's allegations." (Mot. at 17.) The sole document that Moldex cites is an "Opportunity List" drafted by PIP's former consultant, Jason Call. But here again, Moldex served its Rule 11 motion before Mr. Call was deposed. During his deposition, Mr. Call testified



(Ex. 9, Call Dep. 140:19-141:4 (emphasis added), *see also id.* 142:23-143:1.) Mr. Call explained that

14

███████████████████████████████████████████████ (*Id.* 140:13-18.)

The only ████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████ (Ex. 10, Moldex00006436)—as Mr. Call explained, to the extent the spreadsheet ████████████████████████████
█████████████████████████████████████████████████████████████
███████████████ (Ex. 9, Call Dep. 143:16-144:23; *id.* 145:23-146:5 ("███████████
████████████████████████).) And Moldex does not claim in its Motion that the spreadsheet ██████████████████████████████████████████████
████████████████████████████████████████████████████. (*See* Ex. 11, Moldex00006439.) Mr. Call also testified that █████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
██████ (Ex. 9, Call Dep. 146:22-149:12.) Though Moldex claims that "PIP had the evidence" to establish lost sales to Siemens and Coca-Cola, the testimony above is discrepant with Moldex's interpretation. And even if that was not the case, PIP's argument on this point is that Moldex did not sufficiently *allege* lost sales. If Moldex now believes it has access to facts to overcome that deficiency, it could have sought leave to amend to add those allegations—its decision not to do so does not support a Rule 11 sanctions award.

### C. 82% Bio-Based Content "Representation"

Finally, Moldex claims that "[o]ne of PIP's argument[s] for dismissal rested on PIP's false two-category premise that BioSoft earplugs are '82% bio-based' while Moldex's earplugs are not," (Mot. at 18), and that PIP's motions "depended entirely on the truth of the 82% bio-based claim." (*Id.* at 19.) Moldex's argument articulates two Rule 11 violations. First, that PIP failed to conduct a thorough pre-litigation analysis. Second, that PIP withheld

15

a test report showing 25% bio-based content on PIP's corded product, and then did not correct the record. Neither has merit.

As to the first, Moldex does not accurately describe PIP's motions to dismiss. In its initial motion, PIP challenged Moldex's Complaint, in part, under Rule 9(b). (Dkt. 22 at 18.) That is because, to the extent Moldex challenged the truthfulness of PIP's claim that the BioSoft products contained 82% bio-based content, "Moldex's claim hinge[d] on its allegations that it commissioned its own Beta Analytic testing[.]" (*Id.*) But because Moldex "fail[ed] to attach [] the test reports at issue," PIP argued that "Moldex cannot satisfy Rule 9(b)'s particularity requirement[.]" (*Id.* (citing *Rowdy Mermaid Kombucha LLC*, 2018 WL 9802099, at *2).) When Moldex attached its testing to the FAC, PIP did not renew that argument.

In its motion to dismiss the FAC, PIP did not rely on a claim that the BioSoft earplugs contained 82% bio-based content. Instead, PIP challenged Moldex's claim that PIP advertised the BioSoft earplugs as "exclusively or substantially comprised of biological materials" as no such statement appeared in PIP's marketing. (ECF No. 33 at 4 (emphasis omitted).) And as to PIP's other arguments, which addressed standing, neither of PIP's motions "rested" on the truth of the "82% bio-based" statements in the marketing at issue. To the contrary, PIP accepted as true Moldex's allegation, based on Moldex's own testing, that the bio-based content of the product was between 5% and 40%. (*See, e.g.*, Dkt. 22 at 5.) A closer look at the three statements that Moldex cites, as set forth below, confirms this.

**First**, Moldex challenges the following statement from the "Background" of PIP's initial motion to dismiss: "[t]hose reports identify ASTM D6866 as the test method and show 82% or more biobased content[.]" (ECF No. 22 at 5.) The full quote reads as follows:

> Before Moldex filed its Complaint, PIP provided Moldex's counsel with a series of testing reports from Beta Analytic, an "accredited testing laboratory." (*See* Compl. ¶ 44; Ex. D (Dkt. 1-4) at 3, 5-12.) Those reports identify ASTM D6866 as the test method and show 82% or more biobased content. (*Id.* ¶ 43.)

16

(*Id.*) Before Moldex filed its Complaint, PIP provided Moldex's counsel with documents that PIP understood were Beta Analytic testing reports—reports that Moldex attached to the Complaint.[9] (Dkt. 1-4 at 3, 5-12.) Moldex's Complaint described Beta Analytic as an "accredited testing laboratory," which was taken as true. (Dkt. 1, ¶ 44.) The Complaint also alleged that PIP "provid[ed] more recent testing data from Beta Analytic supposedly from July 2024 and supposedly on the foam material used in PIP's BioSoft earplugs, which purportedly showed 85–89% biobased content." (*Id.* ¶ 43.) The reports attached to the Complaint (Dkt. 1-4) also note the ASTM D6866 test method.

Relevant here, the foregoing appeared in the "Background" section of PIP's brief. None of PIP's substantive arguments relied on such matters. As described above, PIP's substantive arguments accepted the truth of Moldex's factual allegations, as a motion to dismiss must, including the validity of Moldex's Beta Analytic testing and its related allegation as to the bio-based content of the product. (Dkt. 22 at 2.) And ultimately, Moldex responded to PIP's motion to dismiss the initial Complaint by filing its FAC. (Dkt. 27.)

**Second**, Moldex challenges as untrue the following statement from PIP's motion to dismiss the FAC: "[t]he [BioSoft] earplugs are 'made from 82% bio-based materials.'" (Dkt. 33 at 4.) Here again, the full quote is as follows:

> Moldex's primary challenge is to statements relating to the use of "bio-based" materials. (*Id.* ¶¶ 3-6.) Moldex alleges that "PIP's prominent, literally false and/or *unqualified* marketing of BioSoft products as '82% bio-based' or more generally simply 'bio-based' is false, deceptive, and misleading in conveying that the products are *exclusively or substantially* comprised of biological material." (*Id.* ¶ 6 (emphasis added); *see also id.* ¶ 59.) But Moldex identifies no statement—let alone a "prominent" and "unqualified" one—in which PIP

[9]As PIP has already apprised the Court, it appears that Nanos (a third-party supplier of materials used in the BioSoft products) provided PIP test reports that appeared to be Beta Analytic test reports but were not in fact so. (*See* Dkt. 150.) Those issues remain a focus of ongoing discovery (*id.*) but are not relevant here as Moldex's Motion is not premised on those facts. Moreover, the test report described in PIP's motion was not one received from Nanos, it was received from Beta Analytic. And whatever factual attacks Moldex will make in discovery as to that report are unrelated to PIP's pleading arguments, which accepted the truth of Moldex's testing allegations. (Dkt. 22 at 2.)

17

says this. Instead, Moldex identifies the statement that BioSoft earplugs are "made from 82% bio-based materials"—18% short of a product "exclusively" comprised of such content. (*Id*. ¶ 4, 49; *see also id*. ¶ 93.)

(Dkt. 33 at 4 (emphasis in original).) This paragraph does not state what Moldex claims. It makes two different points—***first***, that Moldex makes allegations about "unqualified" marketing that conveys the products are "exclusively" comprised of biological material; and ***second***, that those allegations are contradicted by the marketing that Moldex itself identifies in the FAC. In other words, all that PIP did was cite the FAC's allegations about the marketing at issue in Moldex's pleading.

**Third**, Moldex cites statements PIP made in a discovery motion that PIP filed in moving to compel Moldex to produce all testing that it conducted on the BioSoft earplug product line. While Moldex claims that these statements were made "[i]n seeking to dismiss Moldex's complaint," (Mot. at 19), Moldex has not explained how a statement PIP made in a later discovery submission is retroactively incorporated by reference in its prior motions to dismiss—let alone how they support imposing Rule 11 sanctions.

As to the second argument—that PIP failed to correct the record once it produced a test report with a bio-based content result of 25% on a corded product—Moldex again misses the mark. Moldex suggests that PIP improperly withheld this information from its interrogatory responses. (Mot. at 21.) That misstates the record. In response to Moldex's Interrogatory No. 5, PIP included an objection that the Request was "overly broad and unduly burdensome as it requires the manual compilation of information contained within numerous business records." (Ex. 13, PIP's R&O's to Moldex First Set of Interrogatories.) Moreover, after identifying certain records that had already been produced, the response continued as follows:

> In addition, in accordance with Federal Rule of Civil Procedure 33(d), PIP identifies the test reports and analyses that will be included in PIP's initial document production in response to Moldex's First Set of Requests for Production. PIP reserves the right to amend or supplement this response as its investigation continues.

18

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

(*Id.*) In accordance with that response, PIP produced the test report that Moldex now claims PIP withheld. In any event, the 25% test result on the corded product required no correction to the motion to dismiss. For one thing, PIP's marketing of the BioSoft earplug product indicated that the "ear plugs" themselves are "made from 82% bio-based materials." (Ex. 14, Moldex0000127 at -128; *see also id.* at -129 ("BioSoft™ PF-1 contains 82% USDA® certified bio-based content.") But more to the point, for purposes of its motions to dismiss, PIP took as true Moldex's *own* test results on the BioSoft product—which reported bio-based results between 5% and 40%. (ECF No. 1-5.) In other words, the test report Moldex now cites falls within the range of test results that PIP assumed to be true in its motions.

By all accounts, PIP did not make any factual representations—let alone misrepresentations—that warrant Rule 11 sanctions. The Motion should be denied.

## III.   CONCLUSION

Rule 11 sanctions are reserved for "the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust*, 859 F.2d at 1344-45. Moldex cannot satisfy that standard. For the foregoing reasons, the Court should deny Moldex's motion.

Dated: July 30, 2026

Respectfully submitted,
DECHERT LLP

By:   */s/ Jay Bhimani*

Jay Bhimani (SBN 267689)
jay.bhimani@dechert.com
Allison K. Ozurovich (SBN 312797)
allie.ozurovich@dechert.com
Allison M. DeJong (SBN 363033)
allison.dejong@dechert.com
633 W. 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

Craig Castiglia (*pro hac vice*)

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS

craig.castiglia@dechert.com
2929 Arch Street
Philadelphia, PA 19104-2802
Telephone: (215) 994-4000

*Attorneys for Defendant Protective Industrial Products, Inc.*

PIP'S MEMORANDUM IN OPPOSITION TO MOLDEX'S MOTION FOR SANCTIONS