QUINN EMANUEL URQUHART & SULLIVAN, LLP
Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Frank C. Calvosa (*pro hac vice*)
frankcalvosa@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 848-7000

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300

*Attorneys for Plaintiff Moldex-Metric. Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MOLDEX-METRIC, INC., a California corporation,

Plaintiff,

v.

PROTECTIVE INDUSTRIAL PRODUCTS, INC., a New York corporation,

Defendant.

Case No. 2:25-cv-08931-FMO-E

**MOLDEX'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

The Hon. Fernando M. Olguin

Hearing Date: September 3, 2026
Discovery: October 20, 2026
Trial Date: May 11, 2027

# TABLE OF CONTENTS

**Page**


I. PIP DOES NOT DISPUTE THE FACTS THAT ESTABLISH ITS RULE 11 VIOLATIONS ..... 1

II. PIP MISCHARACTERIZES ITS MOTION TO DISMISS AS AN ALLEGED "FACIAL ATTACK," A LABEL THAT DOES NOT IMMUNIZE FACTUAL MISREPRESENTATIONS ..... 4

III. THE POST-FILING RECORD CONFIRMS RULE 11 VIOLATIONS AND IS PROPERLY BEFORE THE COURT ..... 10

A. The Court Can and Should Consider the Post-Filing Record ..... 10

B. PIP's "Beta Analytic" Testing Is Fraudulent ..... 12

C. PIP's Own Witnesses Confirm Direct Competition With Moldex ..... 18

D. The Record Confirms Diverted Sales PIP Has Denied ..... 19

IV. PIP'S OPPOSITION AND CONTINUED ADVOCACY WARRANTS ADDITIONAL SANCTIONS ..... 20

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bank of New York Mellon v. DeSelms*,
2018 WL 6920668 (C.D. Cal. Aug. 16, 2018) .......... 4, 5, 8

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) .......... 7

*Cont'l Air Lines, Inc. v. Grp. Sys. Int'l Far E., Ltd.*,
109 F.R.D. 594 (C.D. Cal. 1986) .......... 6

*Edwards v. Gen. Motors Corp.*,
153 F.3d 242 (5th Cir. 1998) .......... 18, 21

*Lake v. Gates*,
130 F.4th 1064 (9th Cir. 2025) .......... 7

*Marcus v. Alexandria Real Estate Equities, Inc.*,
2022 WL 2815904 (C.D. Cal. May 3, 2022) .......... 8

*Martinez v. City of W. Sacramento*,
2021 WL 2227830 (E.D. Cal. June 2, 2021) .......... 11

*MI-94, LLC v. Chemetall US, Inc.*,
2023 WL 8186618 (D. Nev. Nov. 27, 2023) .......... 12

*Moran v. Charter Commc'ns, Inc.*,
2020 WL 5833640 (C.D. Cal. June 11, 2020) .......... 11

*Nguyen v. Simpson Strong-Tie Co., Inc.*,
2020 WL 5232564 (N.D. Cal. Sep. 2, 2020) .......... 18, 21

*Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*,
808 F. Supp. 3d 987 (N.D. Cal. 2025) .......... 9, 18, 20, 21

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) .......... 21

*SG Blocks, Inc. v. Hola Cmty. Partners*,
2021 WL 2714596 (C.D. Cal. July 1, 2021) .......... 11

*Velez v. Foresters Life Ins. & Annuity Co.*, 2025 WL 3691474 (C.D. Cal. Dec. 11, 2025) .......... 1

*Ward v. Jump Trading, LLC*, 2026 WL 145846 (N.D. Cal. Jan. 20, 2026) .......... 11

**Other Authorities**

Fed. R. Civ. P. 11(b) .......... 11

Fed. R. Civ. P. 11(c) .......... 11

Fed. R. Civ. P. 11 Advisory Comm. Notes (1993) .......... 11

Local Rule 7-10 .......... 11

PIP filed its opposition to this motion on July 30, 2026, remarkably still seeking to maintain its motion to dismiss without any correction to the record—after the July 14 deposition of PIP's supplier, John Nanos, revealed a years long scheme to defraud the U.S. government, distributors, and customers who purchased BioSoft products; after PIP's own July 15 "emergency" filing conceding Beta Analytic reports are "doctored"; and after the July 20 deposition of Beta Analytic's president confirming under oath that eight of twelve "Beta Analytic" reports PIP and its supplier produced in this litigation are fraudulent and part of "a very coordinated, organized effort to misrepresent my company's results to others." PIP's opposition brief engages none of this, or any other evidence, except in a single passing footnote. The foundation of PIP's motion to dismiss is nonexistent; PIP failed to conduct a reasonable inquiry or chose to ignore the facts in making numerous factual representations and denials to the Court. PIP's motion to dismiss never should have been filed, and it has no basis to continue advocating for it.

## I. PIP DOES NOT DISPUTE THE FACTS THAT ESTABLISH ITS RULE 11 VIOLATIONS

PIP's opposition concedes or is silent on the core evidence underlying each of the grounds for sanctions. *Velez v. Foresters Life Ins. & Annuity Co.*, 2025 WL 3691474, at *6 (C.D. Cal. Dec. 11, 2025) ("A party's failure to address an argument in opposition briefing constitutes a concession of that argument."). The record on PIP's false and misleading factual representations and denials in pleadings to the Court on biobased testing, competitive targeting, and diverted sales is uncontested in all material respects—and, as set forth in Section III, the record developed since the filing of Moldex's motion has only further confirmed each point.

**PIP withheld the only legitimate bio-based testing it conducted that proved the falsity of its claim.** PIP does not dispute that it possessed, withheld, and produced only after being compelled, the only legitimate Beta Analytic report PIP itself conducted on a commercially sold BioSoft product, which directly contradicted its

82% bio-based representations to the Court. In moving to dismiss Moldex's complaint and other pleadings, PIP represented that Beta Analytic testing corroborated its false 82% bio-based claim. Mot. at 11, 18-19 (citing Dkt. 22 at 3, 5, 18; Dkt. 33 at 1, 4; Dkt. 44 at 7, 10). What it did not disclose to Moldex or the Court was the only legitimate Beta Analytic test of a commercial product from [redacted]. Dkt. 133-12 at -7293. On the day that result came in, PIP's Hearing Protection Category Manager (Dan Birch) emailed its VP of R&D and Manufacturing (Tom Wagner): [redacted] Dkt. 133-14 at -7291. Birch then reached out to Beta Analytic asking for an explanation about the [redacted] Beta Analytic's president [redacted] Dkt. 133-13 at -7296 (all caps in original)).[1] PIP does not dispute that it [redacted], produced neither until compelled, and does not explain how it can maintain its motion and continue to represent to the Court that Beta Analytic testing corroborated the 82% bio-based claim while the only [redacted]. It likewise does not dispute that it knew before opposing Moldex's motion that "Beta Analytic" testing reports it claims to have relied upon are fraudulent. *See* Section III.

**PIP built its sales strategy around taking Moldex's customers.** [redacted]

[1] Hatfield followed up weeks later to report that Beta had [redacted] Paunovich Reply Decl., Ex 1 (Hatfield Tr.) at 186:3-9; *see also id.* at 186:22-187:9 (Beta had [redacted]).

[redacted]. Dkt. 133-4 at -005140, -005143. PIP's [redacted] Dkt. 133-5 at 23:41-59 (emphasis added). PIP's Director of Product Sales, James Wilson, [redacted]. Paunovich Reply Decl., Ex. 2 (Wilson Tr.) at 114:22-115:9, 225:9-24. PIP's claim that the [redacted] is a non sequitur. Opp. at 11-12. PIP does not deny that the [redacted].

**PIP knew it diverted Moldex customers.** PIP does not dispute that its own records identified [redacted]. PIP's [redacted]. Dkt. 133-11. [redacted] *Id.* at 6, 13. PIP held this document, and others showing diversion directly from Moldex customers (*see* Section III), while telling this Court that Moldex's allegations about [redacted].

## II. PIP MISCHARACTERIZES ITS MOTION TO DISMISS AS AN ALLEGED "FACIAL ATTACK," A LABEL THAT DOES NOT IMMUNIZE FACTUAL MISREPRESENTATIONS

Moldex's motion is based on PIP's affirmative factual misrepresentations about (1) testing allegedly supporting its 82% bio-based claim, (2) alleged lack of targeting Moldex as a competitor, and (3) alleged lack of any diverted sales. PIP knew or should have known these factual representations and denials were false if even a cursory inquiry were conducted on the facts alleged in Moldex's complaint. PIP tries to explain this away by characterizing its motion to dismiss as a "facial attack." Opp. at 2-3. Not so. A facial attack accepts a plaintiff's allegations as true and challenges whether the pleading states a cognizable claim—it says nothing about the defendant's own facts. *See Bank of New York Mellon v. DeSelms*, 2018 WL 6920668, at *3-4 (C.D. Cal. Aug. 16, 2018) (finding standing challenge factual rather than facial where defendant "dispute[d] the *truth* of Plaintiff's allegation rather than its adequacy") (emphasis in original)).

What PIP did was different. Its motion to dismiss makes affirmative representations and denials resting on the truth and legitimacy of facts. That its own "Beta Analytic" testing results allegedly supported PIP's 82% bio-based claim and therefore occupy a different market category than Moldex's products entirely. That Moldex is not and never was a competitor, and that no customers or sales had been converted from Moldex to BioSoft based on PIP's false claims. These factual representations and denials are not a facial attack. *See DeSelms*, 2018 WL 6920668, at *3 (challenge "properly categorized as a factual, rather than a facial, attack" where defendant "disputes the truth of Plaintiff's allegation rather than its adequacy"). Rule 11(b)(3) governs PIP's factual representations and denials.

**PIP affirmatively relied on its (fraudulent) testing reports to counter Moldex's legitimate testing.** PIP affirmatively represented that its "Beta Analytic" reports "show 82% or more biobased content," that its testing "contradicts" Moldex's,

that BioSoft earplugs are "made from 82% bio-based materials," and that "PIP has provided Moldex with multiple test results corroborating this very claim." Mot. at 11, 18-19 (citing Dkt. 22 at 3, 5, 18; Dkt. 33 at 1, 4; Dkt. 44 at 7, 10). Each of these representations is factual about testing PIP is relying on to support its false 82% bio-based claim and rebut Moldex's contrary results.

PIP casts these references as "background" describing the complaint. Opp. at 16-17. PIP's papers show otherwise. For example, across multiple filings, PIP told the Court that "[t]he [BioSoft] earplugs are 'made from 82% bio-based materials,'" Dkt. 33 at 4; that its testing reports "show 82% or more biobased content," Dkt. 22 at 2, 5; that "PIP has provided Moldex with multiple test results corroborating this very claim," Dkt. 44 at 7, 10; and that Moldex "pleads no facts plausibly suggesting that a customer who prefers an eco-friendly [82% bio-based] earplug would buy a Moldex product without those characteristics," Dkt. 33 at 2.[2]

These are affirmative factual representations that PIP's (fraudulent) testing is more reliable than Moldex's. *See, e.g.*, *DeSelms*, 2018 WL 6920668, at *4 (challenge is "factual, rather than a facial, attack" when movant "disputes the truth of Plaintiff's allegation rather than its adequacy"). PIP used the premise of these representations throughout its briefing to argue Moldex's allegations were implausible and that PIP's false environmental claims were true.

Rule 11 reaches PIP's affirmative factual representations regarding its "Beta Analytic" testing regardless of the label PIP attaches to them. PIP's counsel either failed to conduct a reasonable inquiry or chose to ignore the facts that made these factual representations unsupportable. For example, they could have simply asked PIP's Hearing Protection Category Manager (Birch) and VP of R&D and

---

[2] *See also* Dkt. 22 at 2 ("[E]ven accepting Moldex's allegations about the testing it conducted (which PIP's third-party testing attached to the Complaint contradicts), the BioSoft products contain up to 40% bio-based content.").

Manufacturing (Wagner), both of whom PIP designated as 30(b)(6) corporate representatives on bio-based testing and formulations, [redacted]. As explained in Section I above, the answer was readily available from both of them and any reasonable inquiry would have found it. *Cont'l Air Lines, Inc. v. Grp. Sys. Int'l Far E., Ltd.*, 109 F.R.D. 594, 597 (C.D. Cal. 1986) ("Reasonable inquiry ... certainly would include ascertaining from your client all reasonably available facts within the knowledge of the client"); *id*. at 596 ("all of the relevant facts should have been known to defendant's counsel if reasonable inquiry had been made, since they consist of defendant's own documents and the testimony of one of defendant's directors"). Birch and Wagner [redacted]. These documents sat in PIP's corporate representatives' own files, unproduced throughout PIP's briefing on the motion to dismiss, until Moldex compelled their production.[3]

PIP's attempt to distinguish Moldex's authorities supporting Rule 11 sanctions falls flat. PIP argues *Continental Airlines* is distinguishable because that counsel ignored readily available jurisdictional facts that were in the client's documents and knowledge. Opp. at 6-7. That description fits this case equally well. The 2[redacted] were in PIP's files and the knowledge of its 30(b)(6) corporate representatives, Birch and Wagner. *See* Section I. The operative principle of *Continental Airlines* is that sanctionable facts "consist of defendant's own documents" and "should have been known to defendant's counsel if reasonable inquiry had been made." 109 F.R.D. at 596, 599-600. PIP's counsel either did not

[3] As explained in Section III below, [redacted]. PIP's supplier, Nanos, produced fraudulent versions of the reports that had been adulterated to appear as if they supported PIP's 82% claim.

inquire or chose to ignore these facts in making false and misleading representations in its papers. *See Lake v. Gates*, 130 F.4th 1064, 1069 (9th Cir. 2025) (no abuse of discretion where district court granted sanctions based on lack of reasonable inquiry).

PIP argues *Business Guides* is inapplicable because it involved a TRO based on false affidavits rather than a motion to dismiss. Opp. at 7-8. That is an irrelevant distinction. The Supreme Court held that Rule 11 "imposes on any party who signs **a pleading, motion, or other paper** . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) (emphasis added). The Court applied Rule 11's standard without confining it to any particular category of filing. *Id*. at 548 ("signer must conduct a 'reasonable inquiry' or face sanctions"). Here, PIP represented that its (fraudulent) "Beta Analytic" testing corroborated the 82% claim while [redacted]. And if there were any doubt about the adequacy of PIP's motion to dismiss prefiling inquiry, it has since been resolved: as explained in Section III below, PIP and its counsel knew before filing the opposition to this motion that the "Beta Analytic" testing they cited to this Court in support of the 82% bio-based claim was not merely unsupportable but entirely fabricated.

**PIP affirmatively represented that it did not target or compete with Moldex.** PIP's lack of targeting and competition arguments in its motions to dismiss rested on a false factual premise. It argued that Moldex was not a competitor because it does not sell "a bio-based, sustainable earplug like those in the BioSoft line." *See* Mot. at 11, 18-19 (citing Dkt. 22 at 3, 5, 18; Dkt. 33 at 1, 4; Dkt. 44 at 7, 10). Again, these are not facial challenges accepting the truth of Moldex's allegations, but rather affirmative factual misrepresentations by PIP. Further, as explained above, BioSoft is not actually 82% bio-based or anything close to it, as the "Beta Analytic" reports PIP cited were fraudulent. There is no bio-based earplug market. Moldex and PIP compete for the same foam earplug customers with essentially identical products.

PIP calls its competition argument a legal challenge to standing. Opp. at 10. But a legal argument that depends on the truth of the advertising claim under challenge is not a facial attack. *See DeSelms*, 2018 WL 6920668, at *4 (standing argument was "factual, rather than a facial, attack" where it turned not on the adequacy of plaintiff's pleading but on the disputed truth of whether plaintiff actually held the property interest it claimed). It is an affirmative factual representation about the alleged market premised on the truth of PIP's bio-based claim, which a reasonable inquiry would have shown to be false, and Rule 11(b)(3) governs it regardless of label.

More importantly, PIP's documents directly contradict its competition argument. As explained above, PIP's former Product Sales Manager, Jason Call, [redacted]. Rule 11 required counsel to verify that factual premise before filing. *Marcus v. Alexandria Real Estate Equities, Inc.*, 2022 WL 2815904, at *3 (C.D. Cal. May 3, 2022) (sanctions where counsel made "no effort to obtain [the information] from his client before filing"). PIP argues *Marcus* concerned diversity jurisdiction, not standing. Opp. at 7-8. This is another irrelevant distinction. What *Marcus* concerned was counsel making a factual representation to the court without obtaining and verifying the underlying facts from the client. PIP's competition argument was a false factual representation about the market. The same failure applies.

PIP also affirmatively denied targeting Moldex. *See* Mot. at 5-6. It contends the [redacted] Opp. at 11-12. Neither point holds. [redacted] Dkt. 133-4 (emphasis added); [redacted] Dkt. 133-9 at -751; [redacted]

[redacted] Dkt. 133-8 at -5206. The [redacted] Dkt. 133-4 at -005140, -005143 (emphasis added). PIP possessed this [redacted] when filing its motion and said nothing. *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F. Supp. 3d 987, 1001 (N.D. Cal. 2025) (sanctions warranted where counsel "purposefully ignored evidence disproving their argument").

**PIP affirmatively denied diverted sales and denied possessing the evidence.** PIP told this Court that Siemens and Coca-Cola, the entities Moldex specifically listed in its complaint, had not "bought PIP's product instead of Moldex's product, let alone because of PIP's marketing," and that "it is not the case" that "only PIP can know" whether those conversions occurred. Mot. at 10 (citing Dkt. 33 at 8; Dkt. 39 at 2). Those were two distinct affirmative denials. The first denied that the customers Moldex identified were converted to BioSoft. The second denied that the relevant information was within PIP's possession. A facial pleading challenge to Moldex's allegations of diverted sales would have contested whether the complaint adequately alleged the causal chain from false advertising to lost sales. These denials went further, and Rule 11(b)(3) governs them.

A reasonable prefiling inquiry would have surfaced PIP's own [redacted] Dkt. 133-11 at 1-2, 6, 13. That document was solely in PIP's possession and knowledge. Moldex had no way to access it. Rule 11(b)(3) required counsel to determine whether records bearing on its denials existed before certifying that they did not.

PIP's opposition offers its former Product Sales Manager's testimony, an employee (Call) that has not worked for the company since June 2024, that to his

knowledge [redacted]. Opp. at 14-15. That is not what the full record shows, and is yet another misrepresentation to this Court by PIP. At the close of his deposition, Call [redacted] Paunovich Reply Decl., Ex. 3 (Call Tr.) at 156:2-10. Moreover, as explained in Section III below, the post-filing record further confirms that PIP possessed documentation of multiple additional Moldex customer conversions and targeted sustainability-based pursuits PIP knew of when making its denials to this Court.

## III. THE POST-FILING RECORD CONFIRMS RULE 11 VIOLATIONS AND IS PROPERLY BEFORE THE COURT

Although Moldex's motion is sufficient on the evidence it initially proffered, material developments regarding fraudulent bio-based testing, competitive targeting, and diverted sales have been revealed since it was filed that further supports sanctions.

Moreover, PIP filed its opposition to this motion with full knowledge of the evidence discussed below. PIP's principal response is that Moldex could amend its complaint. Opp. at 1, 15.[4] Whether Moldex could amend is irrelevant to Rule 11 and PIP's obligation to conduct a reasonable inquiry and refrain from asserting, denying, or maintaining positions that are indefensible.

### A. The Court Can and Should Consider the Post-Filing Record

The evidence discussed below did not exist when Moldex served this motion.[5] Moldex submits it now as rebuttal evidence expressly authorized by Local Rule 7-10.

---

[4] PIP maintains this position (and its motion) despite the Court's Standing Order, which provides in pertinent part: "Motions to dismiss or to strike are discouraged unless counsel have a good faith belief that such motions will likely result in dismissal, without leave to amend, of all or at least some of the claims or counterclaims under applicable law." *Id*. at IV.B.1.b.

[5] Moldex served its motion on PIP on June 15, commencing the 21-day safe harbor period. Exhibits 9, 11-12 to the Paunovich Reply Declaration were either

*Moran v. Charter Commc'ns, Inc.*, 2020 WL 5833640, at *4 (C.D. Cal. June 11, 2020) ("Local Rule 7-10 explicitly allows a party to file a reply with declarations or other rebuttal evidence" that "the Court may properly consider … as rebuttal evidence").

It is also properly before the Court on a second, independent basis. Rule 11(b) imposes a continuing obligation that runs to each act of "later advocating" a motion, not merely to its original signing. Fed. R. Civ. P. 11(b). The advisory committee notes to the 1993 amendment make clear that the rule subjects litigants to sanctions for "insisting upon a position after it is no longer tenable." Fed. R. Civ. P. 11 Advisory Comm. Notes (1993). Assessing whether PIP has discharged that obligation requires examining what PIP knew at the time of each subsequent act of advocacy. *SG Blocks, Inc. v. Hola Cmty. Partners*, 2021 WL 2714596, at *2 n.5 (C.D. Cal. July 1, 2021) ("[It] is clear that Rule 11 does impose a continuing duty now"); *Martinez v. City of W. Sacramento*, 2021 WL 2227830, at *15 (E.D. Cal. June 2, 2021). That inquiry extends to facts that postdate service of Moldex's motion, which PIP knew at the time of filing its opposition.

This evidence, and the evidence presented in Moldex's opening brief, forecloses PIP's argument that Moldex's motion is premature.[6] Opp. at 1, 11, 14 (citing *Ward v. Jump Trading, LLC*, 2026 WL 145846 (N.D. Cal. Jan. 20, 2026)). The *Ward* court denied a defendant's sanctions motion filed at the very outset of a case—before discovery, before any factual record, and before the defendant had prevailed on anything—because resolution "would require the Court to make substantial factual and legal determinations based on the limited record before it." *Id.*

---

produced or occurred after the safe harbor period began on June 15, which prevented Moldex from using them in its initial motion.

[6] PIP also suggests that Rule 11 motions regarding pleadings should be deferred until the merits are resolved. Opp. at 2 (citing *MI-94, LLC v. Chemetall US, Inc.*, 2023 WL 8186618 (D. Nev. Nov. 27, 2023)). But *MI-94* did not address affirmative factual representations and denials made while withholding contradicting documents.

at *14-15. That is not the case here. The parties have collectively taken more than a dozen party and third party depositions and produced thousands of documents. PIP admits its Beta Analytic reports are "doctored." Beta Analytic's president testified that the reports PIP and its supplier produced in this litigation are fraudulent and part of "a very coordinated, organized effort to misrepresent my company's results to others." Paunovich Reply Decl., Ex. 1 (Hatfield Tr.) at 316:3-5. Moldex's motion does not depend on victory at trial. It depends on what PIP represented and denied in its papers, what PIP knew when it made those representations and denials, and what PIP did after those representations and denials were shown to rest on fabricated and contradicting evidence. Simply put, *Ward's* caution about undeveloped records has no application here.

**B. PIP's "Beta Analytic" Testing Is Fraudulent**

Since this lawsuit began, PIP has pointed the Court to multiple rounds of "Beta Analytic" reports in an effort to dismiss Moldex's claims. Mot. at 11, 18-19, 21 (citing Dkt. 22 at 3, 5, 18; Dkt. 33 at 1, 4; Dkt. 44 at 7, 10). As explained below, the post-filing record shows these test reports were either fabricated outright, the samples adulterated to inflate the bio-based result, or component samples that are not the commercial product. There is no testing of the commercial BioSoft products that supports PIP's claim.

**<u>First</u>**, PIP represented to the Court that a Beta Analytic report from 2021 supported its 82% bio-based claims. Mot. at 11, 18-19 (citing Dkt. 22 at 3, 5, 18; Dkt. 33 at 1, 4; Dkt. 44 at 7, 10). It is now established that the report is fraudulent. Paunovich Reply Decl., Ex. 1 (Hatfield Tr.) at 77:15-78:6. As reflected in the annotated images below, the report PIP pointed to was adulterated to replace the original photographs of the actual tested sample—a sponge-like material identified as BioNanopol MD—with pictures of purple earplugs that were never tested by Beta Analytic. *Id.* The bio-based content of the BioNanopol MD material tells the Court nothing about the PIP's BioSoft product it markets as "82% bio-based." Paunovich

Reply Decl., Ex. 4 (Wagner Tr.) at 128:11-129:24 ([redacted]).

[redacted]

**Second**, PIP represented to the Court that a Beta Analytic report from July 2024 supported its 82% bio-based claims. Mot. at 11, 21 (citing Dkt. 33 at 4; Dkt. 44 at 7). This testing followed the [redacted]. *See* Section II. After receiving that result, [redacted]. Paunovich Reply Decl., Ex. 1 (Hatfield Tr.) at 175:11-22. Those component samples were tested by Beta Analytic in [redacted] bio-based content that PIP has affirmatively represented to the Court as corroborating its 82% claim. Mot. at 11, 18-19, 21 (citing Dkt. 22 at 2, 5; Dkt. 33 at 4; Dkt. 44 at 7). A reasonable inquiry would reveal that neither report supports PIP's 82% claim.

The foam sample that generated that [redacted], on information and belief, [redacted] Paunovich Decl., Ex. 1 at (Hatfield Tr.) 130:20-24, [redacted], *id.*, Ex. 4 at (Wagner Tr.) at 287:16-20. Beta Analytic flagged [redacted]. *Id.*, Ex. 1 at (Hatfield Tr.) 141:4-12. [redacted][7] *Id.*, Ex. 1 at 194:22-196:18; Ex. 5 at -008.

[7] Moldex's independent testing of commercially available BioSoft stems by Beta Analytic returned results as low as 5% biobased content. Dkt. 27 (FAC) ¶ 75. Nanos also produced a fabricated stem report showing 99% biobased content—a figure Beta

The earlier June 2024 testing is PIP's only legitimate Beta Analytic test of a commercial product, and the 25% bio-based result is irreconcilable with its affirmative representations about the 82% bio-based claim.

**<u>Third</u>**, PIP secretly conducted Beta Analytic testing earlier this year that confirms that there is no basis to maintain PIP's motion to dismiss, much less oppose this motion. In February 2026, PIP's Hearing Protection Category Manager (Birch) and Vice President of R&D and Manufacturing (Wagner) discussed the Beta Analytic testing commissioned by Moldex in this lawsuit that contradicts PIP's 82% bio-based claims and [redacted]. Paunovich Reply Decl., Ex. 4 (Wagner Tr.) at 181:10-15. [redacted]. *Id.* at 17:24-19:17, 181:5-19; *id.*, Ex. 6 (Nanos Tr.) at 157:2-10. [redacted]. *Id.*, Ex. 4 at 19:15-17; Ex. 6 at 105:9-106:8. [redacted]. *Id.*, Ex. 6 at 123:6-9.

The authentic Beta Analytic results were [redacted], but the versions that Nanos produced in this litigation were doctored to fraudulently report 80% and 81% for those same samples.

---

Analytic confirmed was fabricated. Paunovich Reply Decl., Ex. 1 (Hatfield Tr.) at 203:22-204:21. Given the fraud uncovered, the [redacted].

[redacted]

PIP did not produce the authentic or fraudulent versions,[8] and it is now attempting to prevent Nanos from voluntarily producing communications with PIP's counsel about the fraudulent reports on the basis of an unidentified "privilege" and non-legal "common interest." Moldex moved to compel Nanos's production of these communications over PIP's objection under Rule 45 in Michigan, where Nanos resides and possesses the documents, and will apprise this Court of what they reveal after that dispute is resolved. Nanos also has committed to testify further about what PIP (and its counsel) knew and when. Paunovich Reply Decl., Ex. 7 at 1-2. When Moldex asked PIP's counsel when it first learned of the March 2026 testing happening and whether it had requested production of the fraudulent reports Nanos produced, PIP invoked an unidentified "privilege." *Id.*, Ex. 8 at 2.

Taken as a whole, of the twelve unique "Beta Analytic" test reports that PIP and Nanos have produced in this litigation, eight are outright fabrications. *Id.*, Ex. 1 at 158:7-160:19. Beta Analytic's president called it "a very coordinated, organized effort to misrepresent my company's results to others." *Id.* at 316:3-5. PIP's own filing in this action acknowledges Beta Analytic reports have been "doctored." Dkt. 150 at 3. And for one of the four "authentic" reports, the samples submitted for testing were adulterated prior to submission to improperly bias the bio-based content result. Paunovich Reply Decl., Ex. 1 at 130:3-24 ([redacted]). [redacted]

---

[8] As shown in the images above, [redacted]. When confronted with the adulterations at his first deposition, Nanos could not explain them, before abruptly leaving the deposition mid-questioning by counsel for Moldex. Paunovich Reply Decl., Ex. 6 at 196:4-199:19.

[redacted]—far below PIP's 82% bio-based claim.

PIP filed its opposition to this motion after all of this evidence was revealed over the last several weeks. It addressed the Nanos and Beta Analytic depositions in a single footnote. PIP's brief says nothing about [redacted], and nothing about Beta Analytic's confirmation that eight of twelve PIP and Nanos produced reports are fabrications. PIP's decision to file an opposition to Moldex's motion and maintain its motion to dismiss—acknowledging fabrication only in a footnote while continuing to maintain its motion premised on the testing—"bespeak[s] not negligence, but bad faith: the willful continuation of a suit known to be meritless." *Raydiant*, 808 F. Supp. 3d at 1003 (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 247 (5th Cir. 1998)).

Each act of continued advocacy is an independent basis for sanctions. *Nguyen v. Simpson Strong-Tie Co., Inc.*, 2020 WL 5232564, at *9 (N.D. Cal. Sep. 2, 2020) (sanctions where counsel "either failed to conduct a competent inquiry into the facts necessary to support the claims" or "insisted on doubling down on certain allegations even after it became apparent that they were untenable").

### C. PIP's Own Witnesses Confirm Direct Competition With Moldex

The record developed since Moldex filed this motion further confirms PIP's strategy was built around targeting and converting Moldex customers. For example, PIP's former Product Sales Manager, [redacted]. *See* Paunovich Reply Decl., Ex. 3 (Call Tr.) at 29:6-31:3, 125:22-126:5. [redacted]. *Id.* at 120:15-121:10. Birch [redacted]

[redacted]. *Id.*, Ex. 9 (Birch Tr.) at 169:7-170:23.

PIP's Director of Product Sales and 30(b)(6) witness confirmed that BioSoft [redacted] *Id.*, Ex. 2 (Wilson Tr.) at 101:4-7, 123:12-25, 209:1-2. When pressed on [redacted] *Id.* at 209:7-10. PIP's Executive Chairman, Joe Milot, [redacted] *Id.*, Ex. 10 (Milot Tr.) 71:8-12.

PIP's affirmative factual representations to the Court can only be sustained by failing to conduct a reasonable inquiry or ignoring evidence in PIP's files saying that Moldex is a competitor and target for BioSoft.

**D. The Record Confirms Diverted Sales PIP Has Denied**

The record developed since Moldex filed this motion further confirms that PIP had no basis to deny sales were diverted from Moldex. PIP told this Court it was "not the case" that "only PIP can know" whether conversions occurred. Mot. at 10 (citing Dkt. 39 at 2). But PIP alone maintained [redacted]. Paunovich Reply Decl., Ex. 2 (Wilson Tr.) 89:5-7; *see generally id.*, Ex. 11. Moldex had no access to this information. PIP did not produce its records until the Court ordered it produced in response to Moldex's motion to compel. Dkt. 57 at 5.

PIP's records directly contradict its denial of diverted sales. For example, [redacted]. Paunovich Reply Decl., Ex. 2 (Wilson Tr.) at 60:14-25 (emphasis added); *id.*, Ex. 12 at -10573. That conversion, which PIP's own documents establish was driven by BioSoft's environmental claims, occurred just a few months before PIP filed its motions to dismiss arguing Moldex had not identified any diverted sales.

PIP's records reflect still further conversions from Moldex. Another [redacted], reported converting Moldex end users to BioSoft. *Id.*, Ex. 11 at -11270. PIP's records also show [redacted]. *Id.* at -11267. Lastly, PIP's records show BioSoft sales to [redacted]. *Id.* at -11276; Ex. 2 (Wilson Tr.) at 256:9-23 ([redacted]).

Now, notwithstanding PIP's deposition testimony and records confirming conversion of Moldex customers to BioSoft, PIP still maintains its motion to dismiss—a motion it had no good faith basis to bring in the first place.

## IV. PIP'S OPPOSITION AND CONTINUED ADVOCACY WARRANTS ADDITIONAL SANCTIONS

PIP's opposition, and the at issue representations and denials in its motion to dismiss, with full knowledge of everything set forth in Sections II and III, is sanctionable. Beyond Rule 11, courts have inherent authority and under Section 1927 to impose sanctions against a party or attorney who has acted in bad faith. Here, PIP's conduct after Moldex served this motion: opposing sanctions and continuing to advocate its motion to dismiss, with knowledge that the "Beta Analytic" testing it cited was fabricated warrants consideration of such sanctions. *Raydiant*, 808 F. Supp.

3d at 990 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1245-46 (9th Cir. 2016) (recognizing courts' inherent authority to sanction bad-faith conduct in litigation), *rev'd and remanded on other grounds*, 581 U.S. 101 (2017).

As shown above, PIP failed to conduct a reasonable prefiling inquiry; concealed documents directly contradicting its representations and denials about bio-based testing, competition, and diverted sales; refused to withdraw the motion to dismiss after Moldex sent PIP a letter warning that it would file this motion nor after Moldex served its Rule 11 motion on June 15 to begin the safe-harbor waiting period; attended the Nanos and Beta Analytic depositions and watched the fabrication of its testing records confirmed in real time; filed an ex parte application acknowledging Beta Analytic reports were "doctored"; and filed an opposition to this motion with full knowledge of all of this that addresses none of it in argument—burying a single acknowledgment in a footnote while continuing to maintain its motion premised on the testing. Opp. at 17 n.9.

That conduct, taken together, reflects a deliberate choice to press forward regardless of what the evidence shows. PIP's actions "bespeak not negligence, but bad faith: the willful continuation of a suit known to be meritless." *Raydiant*, 808 F. Supp. 3d at 1003 (quoting *Edwards*, 153 F.3d at 247). Bad faith may be found in the conduct of litigation itself. *Id*. at 990. Each act of continued advocacy, especially after the testing record PIP relies upon was revealed as a complete fabrication, is an independent basis for sanctions under Rule 11, Section 1927, and the Court's inherent authority. *Nguyen*, 2020 WL 5232564, at *9.

## **CONCLUSION**

For these reasons, the Court should grant Moldex's motion and award Moldex its fees and costs in opposing PIP's motion to dismiss and filing this motion.

Dated: August 20, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Joseph M. Paunovich*
Joseph M. Paunovich (Bar No. 228222)
joepaunovich@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Frank C. Calvosa (*pro hac vice*)
frankcalvosa@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 848-7000

Kade A. Allred (*pro hac vice*)
kadeallred@quinnemanuel.com
2755 E. Cottonwood Pkwy., Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300

*Attorneys for Plaintiff Moldex-Metric, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Moldex, certifies that this brief contains 6,421 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Joseph M. Paunovich*
Joseph M. Paunovich